## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.:_____

ODETTE BLANCO DE FERNANDEZ
*née* BLANCO ROSELL,

     Plaintiff,

     v.

SEABOARD MARINE, LTD.,

     Defendant.

_____ /

### COMPLAINT

Odette Blanco De Fernandez, *née* Blanco Rosell ("Plaintiff"), by and through counsel, as and for her Complaint against Seaboard Marine, Ltd. ("Seaboard Marine" or "Defendant"), hereby alleges:

### PRELIMINARY STATEMENT

1.    Plaintiff brings this action to recover damages and interest under the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act of 1996, codified at 22 U.S.C. § 6021, et seq. (the "Helms-Burton Act" or "Act") against Seaboard Marine for trafficking in property which was confiscated by the Cuban Government on or after January 1, 1959 and as to which Plaintiff owns claims.

2.    On September 29, 1960, the Cuban Government published the announcement of the confiscation without compensation of the following belonging to Plaintiff and her siblings:

One: To confiscate, on behalf of the Cuban State, all of the property and rights, whatever their nature, forming the assets of the persons listed in the first Whereas, with the exception of property and rights that are strictly of a personal nature.

Two: To confiscate, on behalf of the Cuban State, all shares or stock certificates representing capital of the entities listed in the [other] Whereas of this resolution, along with all of their properties, rights, and shares that are issued and in circulation.

Three: To order the transfer of the properties, rights, and shares forming the assets of the legal entities listed in the preceding provision to the National Institute for Agrarian Reform (I.N.R.A.).

Four: This resolution to be published in the OFFICIAL GAZETTE of the Republic for purposes of notification and fulfillment of what is provided for by Law No. 715 of 1960.

Resolution No. 436 published in the Cuban Official Gazette dated September 29, 1960 at 23406 (English translation).

3.     The reference to "persons listed in the first Whereas" in Resolution 436 above is a reference to Plaintiff Odette Blanco Rosell [now Odette Blanco de Fernandez] and her brothers Alfredo, Enrique, Florentino, and Byron (collectively, the "Blanco Rosell Siblings"), who had been the subject of "investigations" carried out by the Cuban Government. *See id.* at 23405 (first Whereas clause) ("Whereas: Having considered cases number 3-2-3143. 3-2-8990 and 3-2-9832, regarding the investigations carried out on the following persons. Alfredo, Enrique. Florentino, Byron and Odette Blanco Rosell.").

4.     The Blanco Rosell Siblings' property confiscated by the Cuban Government included all of their "property and rights, whatever their nature forming the assets of the persons listed," including but not limited to:

(a) their wholly owned company, Maritima Mariel SA, and the 70-Year Concession held by Maritima Mariel SA, to develop docks, warehouses and port facilities on Mariel Bay, a deep water harbor located on the north coast of Cuba; and

(b) their wholly owned companies, Central San Ramón and Compañia Azucarera Mariel S.A., including those companies' extensive land holdings (approximately 11,000 acres) on the southeast, south, and west sides of Mariel Bay, which included a number of improvements such as roads, railways, buildings, and utilities

("Confiscated Property").

5.     The Blanco Rosell Siblings were not U.S. citizens when the Cuban Government confiscated their Confiscated Property in 1960.  They fled Cuba after the confiscation and became U.S. citizens before March 12, 1996, the date the Helms-Burton Act was signed into law.  Today, only Plaintiff, age 93, is alive.

6.     In 1996, the U.S. Congress passed the Helms-Burton Act, and President Bill Clinton signed the Act into law on March 12, 1996.  Title III of the Act, which took effect in August 1996, imposes liability against persons who "traffic" in property confiscated by the Cuban Government on or after January 1, 1959, the claims to which are owned by U.S. nationals, including persons who became U.S. nationals before March 12, 1996.

7.     Although Title III's creation of liability as to those engaged in trafficking has remained in force since August 1996, the ability of any potential plaintiff to bring a private right of action for Title III violations had been suspended by the President every six months (pursuant to authority granted in the Act) until May 2019, when President Donald Trump allowed the suspension of Title III's private right of action to lapse, thereby allowing such actions to proceed.

**PARTIES AND RELEVANT NON-PARTY**

8.     Plaintiff Odette Blanco de Fernandez, *née* Blanco Rosell, is a United States national within the meaning of 22 U.S.C. § 6023(15)(A).  She has owned claims to the Confiscated Property since it was confiscated in 1960.   She resides in Miami, Florida.

9.     Defendant Seaboard Marine is a foreign corporation registered to do business in Florida with its principal place of business at 8001 N.W. 79th Ave., Miami, Florida 33166. Seaboard Marine is an ocean transportation company that operates vessel service between the

United States and the Caribbean Basin, including directly to Mariel, Cuba, as well as Central and South America.

10.     Non-Party Seaboard Corp. is a publicly-traded company incorporated in Delaware, with its headquarters located at 9000 W. 677th Street, Merriam, Kansas 66202.  Seaboard Corp. is a holding company for several national and international subsidiaries, including Defendant Seaboard Marine, which is a wholly-owned subsidiary of Seaboard Corp.  By and through its subsidiaries, Seaboard Corp. is involved in the maritime, food, commodity milling and trading, and power industries.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, specifically Title III of the Helms-Burton Act, 22 U.S.C. §§ 6081–85.

12.      The amount in controversy in this action exceeds $50,000, exclusive of interest, treble damages, court costs, and reasonable attorneys' fees.  22 U.S.C. § 6082(b).

13.     Defendant Seaboard Marine is subject to the personal jurisdiction of this Court because its principal place of business is located in this judicial district.

14.     Defendant Seaboard Marine is subject to the personal jurisdiction of this Court pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) and pursuant to Fla. Stat. § 48.193 including subsections § 48.193 (1)(a)1, 2 and 6 and § 48.193(2) thereof, because Seaboard Marine committed and continues to commit acts of trafficking as defined in the Helms Burton Act, 22 U.S.C. § 6023(13) within the state of Florida and this judicial district and thus is subject to personal jurisdiction in the state courts of Florida and in this Court.

15.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant Seaboard Marine resides in this District and under 28 U.S.C. §§1391(b)(2) and 1391(d), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

16.     Contemporaneous with this filing, Plaintiff has paid the special fee for filing an action under Title III of the Helms-Burton Act, 22 U.S.C. § 6082(i), which is $6,548 pursuant to the fee schedule adopted by the Judicial Conference in September 2018.

## I.      THE HELMS-BURTON ACT

### A.      Background

17.     The Helms-Burton Act, signed into law on March 12, 1996, had several goals, including to "protect United States nationals against confiscatory takings and the wrongful trafficking in property confiscated by the Castro regime." 22 U.S.C. § 6022(6).  Further, Congress determined that "'trafficking' in confiscated property provides badly needed financial benefit, including hard currency, oil, and productive investment and expertise to the … Cuban Government and thus undermines the foreign policy of the United States," which foreign policy includes "protect[ing] claims of United States nationals who had property wrongfully confiscated by the Cuban Government." 22 U.S.C. § 6081(6).

18.     Congress found that international law "lacks fully effective remedies" for the "unjust enrichment from the use of wrongfully confiscated property by governments and private entities at the expense of the rightful owners of the property." 22 U.S.C. § 6081(8).

19.     Congress thus decided that "the victims of these confiscations should be endowed with a judicial remedy in the courts of the United States that would deny traffickers any profits from economically exploiting Castro's wrongful seizures." 22 U.S.C. § 6081(11).  The result was

Title III of the Helms-Burton Act – "Protection of Property Rights of United States Nationals" – which imposes liability on persons trafficking in property confiscated from a U.S. national by the Cuban Government on or after January 1, 1959, and which authorizes a private right of action for damages against such traffickers.  *See* 22 U.S.C. § 6082.

20.      The Helms-Burton Act authorizes the President (or his delegate, the Secretary of State) to suspend for periods of up to six months at a time (1) the Title III private right of action, 22 U.S.C. § 6085(c); and/or (2) the effective date of Title III of August 1, 1996, 22 U.S.C. § 6085(b).

21.      Although President Clinton suspended the private right of action under Title III on July 16, 1996 for six months, the August 1, 1996 effective date was not suspended.  Title III of the Act came into effect on August 1, 1996. Starting on that date, traffickers of confiscated property were liable to U.S. nationals with claims to that property but could not be sued while the private right of action remained suspended.

22.      President Clinton and subsequent administrations renewed the suspension of the Title III private right of action, typically for six months at a time, by decision of the President or Secretary of State.   There was never any guarantee future presidents would continue the suspensions and the operative provisions of the Act have remained in effect continuously since 1996.

23.      On April 17, 2019, Secretary of State Pompeo announced that the Trump Administration would no longer suspend the right to bring an action under Title III, effective May 2, 2019.

### B.      The Helms-Burton Act's Private Right of Action

24.      Title III of the Helms-Burton Act provides the following private right of action:

> (1) Liability for trafficking. — (A) Except as otherwise provided in this section, any person that, after the end of the 3-month period beginning on the effective date of this title, traffics in property which was confiscated by the Cuban Government on or after January 1, 1959, shall be liable to any United States national who owns the claim to such property for money damages…

22 U.S.C. § 6082(a)(1).

25.      The Act defines "person" as "any person or entity, including any agency or instrumentality of a foreign state." 22 U.S.C. § 6023(11).

26.      The Act defines "United States national" to include "any United States citizen[.]" 22 U.S.C. § 6023(15).

27.      A person "traffics" in confiscated property if that person "knowingly and intentionally":

> (i)      sells, transfers, distributes, dispenses, brokers, manages, or otherwise disposes of confiscated property, or purchases, leases, receives, possesses, obtains control of, manages, uses, or otherwise acquires or holds an interest in confiscated property,
>
> (ii)     engages in a commercial activity using or otherwise benefiting from confiscated property, or
>
> (iii)    causes, directs, participates in, or profits from, trafficking (as described in clause (i) or (ii)) by another person, or otherwise engages in trafficking (as described in clause (i) or (ii)) through another person, without the authorization of any United States national who holds a claim to the property,

without the authorization of any United States national who holds a claim to the property.

22 U.S.C. § 6023(13).

28.     The Act defines "property" as "any property (including patents, copyrights, trademarks, and any other form of intellectual property), whether real, personal, or mixed, and any present, future, or contingent right, security, or other interest therein, including any leasehold interest." 22 U.S.C. § 6023(12).

29.     The Act defines "confiscated" in relevant part as:

[T]he nationalization, expropriation, or other seizure by the Cuban Government of ownership or control of property, on or after January 1, 1959 —

(i)      without the property having been returned or adequate and effective compensation provided; or

(ii)     without the claim to the property having been settled pursuant to an international claims settlement agreement or other mutually accepted settlement procedure.

22 U.S.C. § 6023(4)(A).

30.     The term "knowingly" under the Act means "with knowledge or having reason to know."  22 U.S.C. § 6023(9).

31.     The Helms-Burton Act adopts the definition of "commercial activity" under 28 U.S.C. § 1603(d), *see* 22 U.S.C. § 6023(3), which defines the term as "either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose."  28 U.S.C. § 1603(d).

32.     Since March 12, 1996, when the Helms-Burton Act was signed into law, it has been clear that companies doing business with Cuba could face potential liability under the Helms-Burton Act if they knowingly and intentionally traffic in confiscated property.

33.     Companies doing business in and/or with Cuba have therefore been on notice since March 12, 1996 that they could face liability under the Helms-Burton Act for trafficking in confiscated property.

### C.     Remedies Under the Helms-Burton Act's Private Right of Action

34.     A person who "traffics" in a U.S. national's confiscated property under the Helms-Burton Act is liable to a plaintiff for money damages equal to:

(i)     the amount which is the greater of —
                        …
        (II) the amount determined [by a court-appointed special master], plus interest; or

        (III) the fair market value of that property, calculated as being either the current value of the property, or the value of the property when confiscated plus interest, whichever is greater[.]

22 U.S.C. § 6082(a)(1)(A)(i).

35.     Interest under the Act accrues from "the date of confiscation of the property involved to the date on which the action is brought[.]"  22 U.S.C. § 6082(a)(1)(B).   Interest is calculated pursuant to "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System" for the calendar week preceding the date of confiscation and compounded annually. 28 U.S.C.  § 1961(a) (incorporated by reference in 22 U.S.C. § 6082(a)(1)(B)).

36.     A person who "traffics" in a U.S. national's confiscated property under the Act is also liable for a plaintiff's court costs and reasonable attorneys' fees.  *See* 22 U.S.C. § 6082(a)(1)(A)(ii).

37.     The Act provides for "Increased Liability"

(B) If the claimant in an action under this subsection… provides, after the end of the 3-month period described in paragraph (1) notice to —

(i)     a person against whom the action is to be initiated, or

(ii)    a person who is to be joined as a defendant in the action, at least 30 days before initiating the action or joining such person as a defendant, as the case may be, and that person, after the end of the 30-day period beginning on the date the notice is provided, traffics in the confiscated property that is the subject of the action, then that person shall be liable to that claimant for damages computed in accordance with subparagraph (C).

(C)     Damages for which a person is liable under subparagraph (A) or subparagraph (B) are money damages in an amount equal to the sum of—

(i)     the amount determined under paragraph (1)(A)(ii) [of 22 U.S.C. 6082(a)], and

(ii)    3 times the amount determined applicable under paragraph (1)(A)(i) [of 22 U.S.C. 6082(a)].

22 U.S.C. § 6082(a)(3)(B), (C).

## FACTUAL ALLEGATIONS

## I.      THE CONFISCATED PROPERTY

38.     Plaintiff, a U.S. national as defined by 22 U.S.C. § 6023(15)(A), owns claims to the Confiscated Property, which includes a 70-year Concession to develop docks, warehouses and port facilities on Mariel Bay.

### A.      Maritima Mariel SA and the 70-Year Concession

39.     Maritima Mariel SA ("Maritima Mariel") was a Cuban corporation set up in 1954 and owned in equal parts by the Blanco Rosell Siblings, including Plaintiff.

40.     On August 15, 1955, the Cuban Government granted to Maritima Mariel a 70-year

Concession:

> 'Maritima Mariel, SA' is hereby granted the concession to plan, study, execute, maintain, and exploit public docks and warehouses in the Bay of Mariel, province of Pinar del Rio, and the construction of new buildings and works, without prejudice to the rights acquired by third persons or entities under previous concessions still in force, for the purposes stated in this paragraph.

Decree 2367 published in the Cuban Official Gazette dated August 15, 1955 at 13864

(English translation).

41.     The 70-Year Concession also authorized Maritima Mariel to exercise a series of

exceptional rights in the Bay of Mariel, including:

a) The occupation and use, either temporary or permanent, of the lands and waters in the public domain or under private ownership and those of the State, province, or municipality, whenever they are essential for the execution and exploitation of the aforementioned projects and works.

b) The right of compulsory expropriation, in accordance with Decree No. 595 of May 22, 1907 or any other later provision regarding ownership, possession, or use of any real estate or private property rights for land that must be occupied for the work, uses, and services mentioned in Section One, a procedure that may also be used with regard to any rights granted by the State, province, or municipality with regard to the maritime-land zone or public domain land or property of those entities of the Nation.

c) The right to impose, on privately owned property, any class of easement for the construction of any type of roads, traffic, access, movement, and parking of vehicles, the establishment of power lines (either overhead or underground), pipes and ducts for water, gas, ventilation, or drainage, and, in general, for anything that is inherent or deemed to be necessary for the purposes of carrying out, maintaining, and exploiting the works that the aforementioned paragraph one deals with, also with the power to attend those cases of forced expropriation, as provided for in the preceding subparagraph.

d) The right to evict any tenants, sharecropper, squatter, or occupant of any other description from any property or facilities that must be occupied, either temporarily or permanently, for the projects referred to repeatedly in Section One, making a payment as compensation to the parties evicted equal to the amount of one year of rent paid in each case.

e) The right to carry out the aforementioned acts by means of applying the provisions contained in Law-Decree No. 1015 of August 7, 1953 and No. 1998

of January 27, 1955, whereby the National Finance Agency of Cuba will
provide the financing of those projects.

*Id.* at 13865-13866 (English translation).

42.     Both Maritima Mariel and the 70-Year Concession are part of the Confiscated
Property and were specifically identified in Resolution 436 as being confiscated from the Blanco
Rosell Siblings by Cuba.

### B.     Central San Ramón, Compañia Azucarera Mariel S.A., and Land

43.     In addition to the 70-Year Concession and Maritima Mariel, the Blanco Rosell
Siblings owned a number of other companies, including the sugar mill then known as the Central
San Ramón, which they purchased in 1949. Central San Ramón was owned and operated by
Compañia Azucarera Mariel S.A. ("Azucarera Mariel"), another company wholly owned by the
Blanco Rosell Siblings.

44.     The Blanco Rosell Siblings also had extensive land holdings (approximately 11,000
acres) southeast, south, and west of Mariel Bay which they owned through Central San Ramón
and Azucarera Mariel.  Those approximately 11,000 acres included a number of improvements
such as roads, railways, buildings, and utilities.

45.     Azucarera Mariel, Central San Ramón, and the 11,000 acres of land are part of the
Confiscated Property that were specifically named in, and confiscated from the Blanco Rosell
Siblings by Cuba, in Resolution 436.

### II.     CUBA'S CONFISCATION OF THE CONFISCATED PROPERTY

46.     On September 29, 1960, per Resolution 436, the Cuban Government announced the
confiscation without compensation of all assets and rights, whatever their nature, then owned by
the Blanco Rosell Siblings and which are herein defined as the Confiscated Property.  Such
Confiscated Property includes, inter alia, Maritima Mariel, the 70-year Concession, Central San

Ramón, Azucarera Mariel, as well as all the "all shares or stock certificates representing capital of the entities listed in the [other] Whereas of [Resolution 436]," which included, inter alia, the 70-Year Concession and all the lands owned by these entities.  See Resolution 436 at 23406.

47.     More specifically, on September 29, 1960, the Cuban Government published Resolution 436 in its Official Gazette on the confiscation without compensation of the following:

> One: To confiscate, on behalf of the Cuban State, all of the property and rights, whatever their nature, forming the assets of the persons listed in the first Whereas, with the exception of property and rights that are strictly of a personal nature.
>
> Two: To confiscate, on behalf of the Cuban State, all shares or stock certificates representing capital of the entities listed in the [other] Whereas of this resolution, along with all of their properties, rights, and shares that are issued and in circulation.
>
> Three: To order the transfer of the properties, rights, and shares forming the assets of the legal entities listed in the preceding provision to the National Institute for Agrarian Reform (I.N.R.A.).
>
> Four: This resolution to be published in the OFFICIAL GAZETTE of the Republic for purposes of notification and fulfillment of what is provided for by Law No. 715 of 1960.

Resolution No. 436 published in the Cuban Official Gazette dated September 29, 1960 at 23406 (English translation).

48.     In addition to expressly naming the 70-Year Concession and the above-referenced legal entities, Resolution 436 also expressly named the five Blanco Rosell Siblings as owners of, *inter alia*, the 70-Year Concession, Maritima Mariel, Central San Ramón, and Compania Azucarera Mariel.

49.     But for Cuba's confiscation in Resolution 436 published in the official Cuban Gazette on September 29, 1960, the 70-year Concession granted in Decree 2367 issued in 1955 would still be in force.  In any event, the Blanco Rosell Siblings' interests in the 70-year Concession were cut short by Cuba's confiscation of the 70-year Concession.

50.     According to the Cuban Official Gazette as published on September 29, 1960, the confiscation of the Confiscated Property occurred on August 19, 1960. The story of the confiscation by the Cuban Government was reported by the Revolución newspaper on September 8, 1960.  Both the Cuban Official Gazette and the newspaper Revolución (now known as Granma following the merger of the Revolución and Hoy newspapers) are  available to the public.

51.     The fact of the confiscation of the Blanco Rosell Siblings' property in Cuba was so well known that on April 18, 2019, the day after the Trump Administration announced it would allow Helms-Burton Act lawsuits under Title III to go forward, stories published on both Radio Marti and TV Marti identified Plaintiff's claims to the Confiscated Property, that comprise the current Mariel Special Development Zone, as one of the top 10 potential Helms-Burton Claims:

> The Mariel Special Development Zone, the star Cuban project to attract investment, was built on nationalized land where the Carranza-Bernal, Carbonell-González and Blanco-Rosell families owned sugar and hemp processing plants.[1]

52.     The Confiscated Property has never been returned nor has adequate and effective compensation ever been provided for the 70-Year Concession or any other property interests belonging to Plaintiff.  The claims to the Confiscated Property have never been settled pursuant to an international claims settlement agreement or other settlement procedure.

53.     Plaintiff never abandoned her interest in or claims to the Confiscated Property.

---

[1]          https://www.radiotelevisionmarti.com/a/propiedades-que-ya-podr%C3%ADan-reclamar-en-tribunales-de-eeuu/236777.html/ *(*last visited December 19, 2020*).*

### III.   THE CUBAN GOVERNMENT INCORPORATED THE CONFISCATED PROPERTY INTO THE ZONA ESPECIAL DE DESAROLLO MARIEL ("ZEDM") (*a/k/a* MARIEL SPECIAL ECONOMIC ZONE)

54.    The Zona Especial de Desarollo Mariel ("ZEDM") (*a/k/a* Mariel Special Economic Zone) is an agency or instrumentality of the Cuban Government.   Created by statute, the ZEDM is a special economic zone in Cuba with its own legal structure.

55.    As stated above, the ZEDM has been referred to in the media as "the star Cuban project to attract investment." *See supra,* ¶ 51.

56.    Cuba incorporated the Confiscated Property into the ZEDM without the authorization of Plaintiff and therefore the ZEDM is trafficking in the Confiscated Property.

57.    Starting in or around 2009, the Government of Cuba and various non-Cuban corporate partners rebuilt the Port of Mariel and constructed a container terminal in the ZEDM.

58.    The ZEDM's container terminal subsumes the Blanco Rosell Siblings' 70-Year Concession rights, pursuant to which they possessed the right, among other things, "to plan, study, execute, maintain and exploit public docks and warehouses in Mariel Bay, Pinar del Rio Province, and the construction of new buildings and works…" *See* Decree 2367 at 13865.

59.    The Blanco Rosell Siblings' extensive land holdings on the southeast, south and west sides of Mariel Bay, all of which are part of the Confiscated Property, cover virtually every square meter of ZEDM section A-5, which the ZEDM operates as a logistics zone.

60.    The Blanco Rosell Siblings' 70-Year Concession encompasses all of Mariel Bay, including, but not limited to, ZEDM's container terminal in section A-7.   The following map illustrates that ZEDM section A-7 encompasses the shoreline of Mariel Bay and land adjacent to the shoreline, areas that are subject to the Blanco Rosell Siblings' 70-Year Concession.



61.     The ZEDM is trafficking in the Blanco Rosell Siblings' Confiscated Property

within the meaning of the Helms-Burton Act because the ZEDM:

(i)     … transfers, distributes, dispenses, brokers, manages, or … leases, receives possesses, obtains control of, manages, uses, or otherwise acquires or holds an interest in [the Confiscated Property];

(ii)    engages in a commercial activity using or otherwise benefitting from [the Confiscated Property],

(iii)   causes, directs, participates in, or profits from trafficking (as described clause (i) or (ii) by another person, or otherwise engages in trafficking (as described in clause (i) or (ii) through another person

without the authorization of any United States national who holds a claim to the property.

22 U.S. Code § 6023(13)(A).

62.     Those who "plan, study, execute, maintain and exploit public docks and warehouses in Mariel Bay, Pinar del Rio Province, and the construction of new buildings and works" (Decree 2367 at 13865) are trafficking in the Plaintiff's 70-Year Concession.

IV.     **SEABOARD MARINE'S TRAFFICKING**

63.     Seaboard Marine has, since at least May 2019, trafficked in the Confiscated Property, by purposefully directing container ships from the port of New Orleans, Louisiana to Mariel, Cuba, either directly or by causing, directing, participating in, or profiting from trafficking by or through another person.  When in Mariel, the container ships dock at, and/or otherwise use, benefit, and profit from the container terminal in the ZEDM including the ZEDM's ports, docks, warehouses, and facilities.  Seaboard Marine also engages in commercial activities using or otherwise benefitting from the ZEDM and Plaintiff's Confiscated Property.

64.     Seaboard Marine is therefore trafficking in Plaintiff's Confiscated Property and benefits or profits from the trafficking of the ZEDM and/or the trafficking of others in Plaintiff's Confiscated Property.

65.     Officers and/or Directors of Seaboard Corp. know that Seaboard Marine does business with the ZEDM and in the ZEDM.

66.     During September 2020, the Blanco Rosell Siblings sent letters to Defendant Seaboard Marine and non-party Seaboard Corp. pursuant to 22 U.S.C. § 6082(a)(3)(D) by certified mail, Federal Express, and messenger, which Defendant Seaboard Marine and non-party Seaboard Corp received on the following dates:

| Defendant | Certified mail Received | Federal Express Received | Messenger Delivery |
|---|---|---|---|
| Seaboard Marine | 9/26/20 | 9/21/20 | 9/28/20 |
| Seaboard Corp. | 9/23/20 | 9/21/20 | 9/28/20 |

67.     Neither Defendant Seaboard Marine nor non-party Seaboard Corp. has responded to Plaintiff's Notice Letters nor sought to obtain Plaintiff's authorization to traffic in the Confiscated Property.

68.     Even after Defendant Seaboard Marine and non-party Seaboard Corp. received Plaintiff's Notice Letters, giving them actual notice of Plaintiff's claims, Defendant Seaboard Marine and non-party Seaboard Corp. continued to traffic in the Confiscated Property.

69.     By way of example, on or about November 17, 2020, the container ship NORD BALTIC, International Marine Organization ("IMO") number 9241475, navigated from the Napoleon Container Terminal in New Orleans to the container terminal in the ZEDM on or about November 21, 2020 for the benefit and/or profit of Seaboard Marine.

**CLAIM FOR DAMAGES**
**TITLE III OF THE HELMS-BURTON ACT**

70.     Plaintiff incorporates by reference paragraphs 1 through 69 as if fully stated herein.

71.     This case is brought pursuant to Title III of the Helms-Burton Act, 22 U.S.C. § 6082.

72.     Defendant Seaboard Marine did traffic, as the term "traffic" is defined in 22 U.S.C. § 6023(13), in the Confiscated Property without authorization of Plaintiff who owns claims to the Confiscated Property.  Defendant Seaboard Marine is therefore liable to Plaintiff under the Helms-Burton Act.

73.     As stated above, Defendant Seaboard Marine has, since at least May 2019, trafficked in the Confiscated Property, including the 70-Year Concession, by purposefully directing container ships from the port of New Orleans, Louisiana to Mariel, Cuba, either directly or by causing, directing, participating in, or profiting from trafficking by or through another person.  When in Mariel, the container ships dock at, and/or otherwise use, benefit, and profit from

18

the container terminal in the ZEDM including the ZEDM's ports, docks, warehouses, and facilities. Seaboard Marine also engages in commercial activities using or otherwise benefitting from the ZEDM and Plaintiff's Confiscated Property.

74.     Seaboard Marine is therefore trafficking in Plaintiff's Confiscated Property and benefits or profits from the trafficking of the ZEDM in Plaintiff's Confiscated Property.

75.     Beginning on or about May 2019, Defendant Seaboard Marine also knowingly and intentionally participated in, benefitted from, and profited from the ZEDM's trafficking in the Confiscated Property, including the 70-Year Concession, without the authorization of Plaintiff.

76.     Defendant Seaboard Marine engages in a commercial activity using or otherwise benefitting from the Confiscated Property, including the 70-Year Concession.

77.     Defendant Seaboard Marine causes, directs, participates in, or profits from trafficking by the ZEDM in the Confiscated Property, including the 70-Year Concession.

78.     Defendant Seaboard Marine has had actual knowledge of Plaintiff's claims to the Confiscated Property since at least September 21, 2020, due to the Notice Letters mentioned in above in Paragraphs 66-68.

79.     Prior to Seaboard Marine's receipt of Plaintiff's Notice Letters, Seaboard Marine knew or had reason to know that Plaintiff holds claims to the Confiscated Property. *See supra,* ¶¶ 39-52, 54-59.

80.     Defendant Seaboard Marine's continued trafficking in the Confiscated Property, including the 70-Year Concession, more than 30 days after its receipt of Plaintiff's Notice Letters which continued trafficking subjects Defendant to treble damages.  22 U.S.C. § 6082(a)(3).

81.     The ZEDM never sought or obtained Plaintiff's authorization to traffic in the Confiscated Property, including in the 70-Year Concession, the land or any other Confiscated Property at any time.

82.     The ZEDM's knowing and intentional conduct with regard to the Confiscated Property constitutes trafficking as defined in 22 U.S.C. § 6023(13).

83.     Defendant Seaboard Marine did not seek or obtain Plaintiff's authorization to traffic in the Confiscated Property, including in the 70-Year Concession or any other property interests at any time.

84.     Defendant Seaboard Marine's knowing and intentional conduct with regard to the Confiscated Property constitutes trafficking as defined in 22 U.S.C. § 6023(13).

85.     As a result of Defendant Seaboard Marine's trafficking in the Confiscated Property, Defendant is liable to Plaintiff for all money damages allowable under 22 U.S.C. § 6082(a) including, but not limited to, those equal to:

a.      The amount greater of: … (i) the amount determined by a special master pursuant to 22 U.S.C. § 6083(a)(2); or (ii) the "fair market value" of the Confiscated Property, plus interest;

b.      Three times the amount determined above (treble damages); and

c.      Court costs and reasonable attorneys' fees.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant Seaboard Marine, Ltd., as follows:

A.      Ordering Defendant to pay damages (including treble damages) including pre-filing interest as provided for in the Act;

B.      Ordering Defendant to pay pre-judgment interest on any

20

amounts awarded;

C.     Ordering Defendant to pay attorneys' fees, costs, and expenses; and

D.     Ordering such other relief as may be just and proper.

**JURY DEMAND**

Plaintiff demands a jury trial on all issues so triable, and a trial pursuant to Rule 39(c),

Federal Rules of Civil Procedure, as to all matters not triable as of right by a jury.

Dated:  December 20, 2020                    Respectfully submitted,


                                             HORR, NOVAK & SKIPP, P.A.

                                             By: ___/s/ *David J. Horr*_____
                                                 David J. Horr
                                                 Florida Bar. No. 310761
                                                 William R. Boeringer
                                                 Florida Bar No. 347191
                                                 William B. Milliken
                                                 Florida Bar No. 143193
                                                 Two Datran Center, Suite 1700
                                                 9130 S. Dadeland Boulevard
                                                 Miami, Florida 33156
                                                 Telephone: (305) 670-2525
                                                 Facsimile: (305) 670-2526
                                                 dhorr@admiral-law.com
                                                 wboeringer@admiral-law.com
                                                 wmilliken@admiral-law.com

                                             By: ___/s/ *John S. Gaebe*_____
                                                 John S. Gaebe
                                                 Florida Bar No. 304824
                                                 Law Offices of John S. Gaebe P.A.
                                                 5870 SW 96 St.
                                                 Miami, Florida  33156
                                                 johngaebe@gaebelaw.com

                                                 *Counsel for Plaintiff*

*Of Counsel*

BERLINER CORCORAN & ROWE LLP

David A. Baron
Melvin White
Laina C. Lopez
1101 17th Street, N.W., Suite 1100
Washington, D.C. 20036-4798
Tel:  (202) 293-5555
Facsimile:  (202) 293-9035
dbaron@bcr-dc.com
mwhite@bcr-dc.com
llopez@bcr-dc.com

FIELDS PLLC

Richard W. Fields
Martin Cunniff
1701 Pennsylvania Ave, N.W., Suite 200
Washington, D.C. 20006
Tel:  (833) 382-9816
fields@fieldslawpllc.com
MartinCunniff@fieldslawpllc.com