UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-25176-BLOOM/Otazo-Reyes

ODETTE BLANCO DE FERNANDEZ,
*née* Blanco Rosell,

    Plaintiff,

v.

SEABOARD MARINE, LTD.,

    Defendant.
_____/

**ORDER ON MOTION FOR PARTIAL RECONSIDERATION**

**THIS CAUSE** is before the Court upon Plaintiffs' Motion for Partial Reconsideration, ECF No. [68] ("Motion"), filed on August 24, 2021. Defendant Seaboard Marine, Ltd. ("Defendant") filed an Opposition to the Motion, ECF No. [70] ("Response"), to which Plaintiffs filed a Reply, ECF No. [71] ("Reply"). The Court has carefully reviewed the Motion, all opposing and supporting materials, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

**I.    BACKGROUND**

Plaintiffs initiated this action against Defendant to recover damages under 22 U.S.C. § 6021, *et seq.* (the "LIBERTAD Act," "Title III," or the "Act"). ECF No. [1]; *see also* ECF No. [45]. According to the Amended Complaint, Odette Blanco De Fernandez *née* Blanco Rosell ("Ms. Fernandez") and her four siblings (collectively, "Blanco Rosell Siblings") owned various corporations and assets in Cuba that were confiscated by the Cuban Government in 1960 ("Confiscated Property"). *See* ECF No. [45] ¶¶ 16-33. Ms. Fernandez, the estates of the four Blanco Rosell Siblings ("Estates"), and the descendants of the four Blanco Rosell Siblings

("Inheritors") all sought to hold Defendant liable under Title III for "trafficking" in the Confiscated Property. 22 U.S.C. § 6082(a)(1)(A).

On March 16, 2021, Defendant filed a Motion to Dismiss Plaintiffs' Amended Complaint, ECF No. [52] ("Motion to Dismiss"), arguing in relevant part that the Inheritors and the Estates did not have an actionable ownership interest in the Confiscated Property because they acquired their claims after March 12, 1996. *See* 22 U.S.C. § 6082(a)(4)(B) ("In the case of property confiscated before March 12, 1996, a United States national may not bring an action under this section on a claim to the confiscated property unless *such* national acquires ownership of the claim before March 12, 1996." 22 U.S.C. § 6082(a)(4)(B) (emphasis added); *see also Gonzalez v. Amazon.com, Inc.*, No. 19-23988-CIV, 2020 WL 2323032, at *2 (S.D. Fla. May 11, 2020), *aff'd*, 835 F. App'x 1011 (11th Cir. 2021) ("The statute states that a United States national may not bring an action 'unless *such* national' acquires an interest to the property before 1996." (citations omitted)).

On July 27, 2021, the Court dismissed the claims of the Inheritors and the Estates from this action. ECF No. [66] ("Order"). Specifically, the Court explained that "because each of the deceased Blanco Rosell Siblings died after March 12, 1996, the Inheritors could not have acquired a claim to the Confiscated Property before the statutory cutoff." *Id.* at 15; *see also* ECF No. [45] ¶¶ 17-20. With respect to the Estates, the Court found that they too did not have an actionable ownership interest in the Confiscated Property. ECF No. [66] at 15-16. The Court rejected Plaintiffs' argument that "the estates and personal representatives 'stepped into the shoes' of the decedents [and] maintain[ed] the original acquisition date of the Confiscated Property" and determined that "upon the death of the four Blanco Rosell Siblings, their assets became property of their respective estates and no longer belonged to them individually." *Id.* at 16. *See Depriest v.*

*Greeson*, 213 So. 3d 1022, 1025 (Fla. 1st DCA 2017); *Sharps v. Sharps*, 214 So. 2d 492, 495 (Fla. 3d DCA 1968) ("Upon [husband's] death, in the twinkling of a legal eye, that check became an asset of the husband's estate."); *see also* Fla. Stat. § 732.101(2) ("The decedent's death is the event that vests the heirs' right to the decedent's intestate property."); Fla. Stat. § 732.514 ("The death of the testator is the event that vests the right to devises unless the testator in the will has provided that some other event must happen before a devise vests.").

Plaintiffs now move pursuant to Federal Rule of Civil Procedure 59(e) for the Court to reconsider dismissal of the Estates only. *See* ECF No. [68]. Specifically, Plaintiffs maintain that "neither *Sharps* nor *Depriest* stand for the proposition that the estates in those cases acquired ownership of the decedent's property." *Id.* at 7 Rather, according to Plaintiff, "those cases simply describe the property of decedents after their death[.]" *Id.*; *see also* Fla. Stat. § 731.201(14) ("'Estate' means the property of a decedent that is the subject of administration."). Plaintiffs also aver that the Court's reliance on Fla. Stat. §§ 732.101(2), 732.514 is misplaced because "these statutes do not provide that an heir acquires ownership of any property upon the death of the decedent, nor could [they] be read to immediately pass ownership to an heir" because "the decedent's property is still 'subject to administration.'" ECF No. [68] at 9. Stated differently, Plaintiffs contend that "[o]wnership of the decedent's property maintains with the decedent until it is formally distributed by the personal representative to the heirs and other beneficiaries[.]" *Id.* Defendant opposes the Motion. *See generally* ECF No. [70].

## II. LEGAL STANDARD

A motion for reconsideration is "an extraordinary remedy to be employed sparingly." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1370 (S.D. Fla. 2002). "The burden is upon the movant to establish the extraordinary circumstances supporting

reconsideration." *Saint Croix Club of Naples, Inc. v. QBE Ins. Corp.*, No. 2:07-cv-00468-JLQ, 2009 WL 10670066, at *1 (M.D. Fla. June 15, 2009) (citing *Taylor Woodrow Constr. Corp. v. Sarasota/Manatee Airport Auth.*, 814 F. Supp. 1072, 1073 (M.D. Fla. 1993)).

> A motion for reconsideration must do two things. First, it must demonstrate some reason why the court should reconsider its prior decision. Second, it must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. Courts have distilled three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice.

*Cover v. Wal-Mart Stores, Inc.*, 148 F.R.D. 294, 295 (M.D. Fla. 1993) (citations omitted).

Because court opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure," a motion for reconsideration must clearly "set forth facts or law of a strongly convincing nature to demonstrate to the Court the reason to reverse its prior decision." *Am. Ass'n of People With Disabilities v. Hood*, 278 F. Supp. 2d 1337, 1339, 1340 (M.D. Fla. 2003) (citations omitted). As such, a court will not reconsider its prior ruling without a showing of "clear and obvious error where the 'interests of justice' demand correction." *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, No. 6:11-cv-1637-Orl-31, 2013 WL 425827, at *1 (M.D. Fla. Feb. 4, 2013) (quoting *Am. Home Assurance Co. v. Glenn Estess & Assoc.*, 763 F.2d 1237, 1239 (11th Cir. 1985)). "When issues have been carefully considered and decisions rendered, the only reason which should commend reconsideration of that decision is a change in the factual or legal underpinning upon which the decision was based." *Taylor Woodrow Constr. Corp.*, 814 F. Supp. at 1072-73; *see also Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1247 n.2 (S.D. Ala. 2008) (noting that reconsideration motions are to be used sparingly, and stating, "imagine how a district court's workload would multiply if it was obliged to rule twice on the same arguments by the same party upon request").

Similarly, "A motion for reconsideration should raise new issues, not merely readdress issues litigated previously." *PaineWebber Income Props. Three Ltd. Partnership v. Mobil Oil Corp.*, 902 F. Supp. 1514, 1521 (M.D. Fla. 1995); *see also Lamar Advertising of Mobile, Inc. v. City of Lakeland*, 189 F.R.D. 480, 490 (M.D. Fla. 1999) ("A motion to reconsider is not a vehicle for rehashing arguments the Court has already rejected and should be applied with finality and with conservation of judicial resources in mind." (internal quotation marks omitted)). Furthermore, a motion for reconsideration "is not an opportunity for the moving party . . . to instruct the court on how the court 'could have done it better' the first time." *Hood v. Perdue*, 300 F. App'x 699, 700 (11th Cir. 2008) (citation omitted).

> It is improper for defendant to utilize its Motion to Reconsider as a platform for rearguing (and expounding on) an argument previously considered and rejected in the underlying Order. *See Garrett v. Stanton*, [No. 08-0175-WS-M, 2010 WL 320492, at *2 (S.D. Ala. Jan. 18, 2010)] ("Far too often, litigants operate under the flawed assumption that any adverse ruling on a dispositive motion confers upon them license to move for reconsideration . . . as a matter of course, and to utilize that motion as a platform to criticize the judge's reasoning, to relitigate issues that have already been decided, to champion new arguments that could have been made before, and otherwise to attempt a 'do-over' to erase a disappointing outcome. This is improper."); *Hughes v. Stryker Sales Corp.*, [No. 08-0655-WS-N, 2010 WL 2608957, at *2] (S.D. Ala. June 28, 2010) (rejecting notion that motions to reconsider "are appropriate whenever the losing party thinks the District Court 'got it wrong'").

*Smith v. Norfolk S. Ry. Co.*, No. 10-0643-WS-B, 2011 WL 673944, at *2 (S.D. Ala. Feb. 17, 2011).

Nevertheless, a motion for reconsideration may be "appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Kapila v. Grant Thornton, LLP*, No. 14-cv-61194, 2017 WL 3638199, at *1 (S.D. Fla. Aug. 23, 2017) (quoting *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992)). "Such problems rarely arise and the motion to reconsider should be equally rare." *Burger King Corp.*, 181 F. Supp. 2d at 1369. Ultimately, reconsideration is a decision that is "left 'to the sound

discretion' of the reviewing judge." *Arch Specialty Ins. Co. v. BP Inv. Partners, LLC*, No. 6:18-cv-1149-Orl-78DCI, 2020 WL 5534280, at *2 (M.D. Fla. Apr. 1, 2020) (quoting *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993)).

### III.    DISCUSSION

In the Motion, Plaintiffs argue that the Court erred in determining that the Estates do not have an actionable ownership interest in the Confiscated Property and cannot maintain Title III action on behalf of the deceased Blanco Rosell Siblings. *See generally* ECF No. [68]. In its Response, Defendant argues that Plaintiffs show no basis for reconsideration, and that Plaintiffs should not be permitted to reargue the same issue already considered by the Court or assert new arguments previously available but not presented. *See generally* ECF No. [70].

Upon review, Plaintiffs' Motion is not well taken and reconsideration is not warranted under the circumstances of this case. Specifically, the Motion fails to raise any new issues or arguments that support granting the requested relief; rather, Plaintiffs' Motion presents nothing more than its disagreement with the Court's Order. *See Z.K. Marine Inc.*, 808 F. Supp. at 1563 ("It is an improper use of the motion to reconsider to ask the Court to rethink what the Court already thought through—rightly or wrongly." (citation and alterations omitted)). This attempt to relitigate issues that the Court previously considered—and rejected—runs afoul of the well-established principle that, "when there is mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted." *Roggio v. United States*, No. 11-22847-CIV, 2013 WL 11320226, at *1 (S.D. Fla. July 30, 2013) (internal citation and quotation marks omitted); *see also Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1274 (11th Cir. 2014) (finding that the "district court . . . acted entirely within its sound discretion in denying [the] motion for reconsideration" when the

"bulk of [the] motion for reconsideration just reiterated [] already-rejected arguments"). As such, Plaintiffs' Motion is improper.

Even so, the Court does not find a basis to disturb its conclusion that the Estates do not have an actionable Title III claim. In determining whether a cause of action survives death, the Eleventh Circuit has instructed that "[i]n the absence of an expression of *contrary intent*, the survival of a deferral cause of action is a question of federal common law." *United States v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993) (emphasis added) (citing *James v. Home Constr. Co. of Mobile*, 621 F.2d 727, 729 (5th Cir. 1980)). The congressional intent is clear that those who acquired claims to confiscated property after Mach 12, 1996 cannot assert a cause of action under Title III. *See* 22 U.S.C. § 6082(a)(4)(B).

In the Order, the Court explained that although the Blanco Rosell Siblings acquired their claims to the Confiscated Property before March 12, 1996, ECF No. [45] ¶¶ 17-20, "upon the death of the four Blanco Rosell Siblings, their assets became property of their respective estates and no longer belonged to them individually." ECF No. [66] at 16 (citations omitted). Yet, according to Plaintiffs, "the Court erroneously relied on the *Sharps'* 'twinkling eye' analogy (which was cited in *Depriest*), to conclude that the estates 'acquired' ownership of the deceased siblings' claims to the Confiscated Property when the siblings died." ECF No. [68] at 2. Plaintiffs further explain that "the Probate Code's post-*Sharps* definition of 'estate' reveals [that] an estate is not a legal entity that can acquire the decedent's property" but rather the term used to describe the decedent's property that is subject to administration in probate." *Id.*; *see also* Fla. Stat. § 731.201(14). As such, according to Plaintiffs, the deceased Blanco Rosell Siblings still owned their claims to the Confiscated Property, no one else acquired them, and the personal representatives are authorized to manage their claims by bringing this lawsuit on their behalf. The Court is not persuaded.

In concluding that the Estates did not have an actionable claim to the Confiscated Property, the Court relied on *Depriest*, 213 So. 3d at 1025-26, which was decided well after the definition of "estate" was codified in § 731.201(14), and relied on *Sharps'* twinkling eye analogy. In *Depriest*, an injured motorist brought an action against a decedent's estate, alleging that the estate was vicariously liable for damages caused by the decedent's daughter while driving the decedent's car. *Id.* at 1024. Before the trial court and on appeal, the parties disputed whether the estate owned the decedent's car after he died. *Id.* at 1025. While the *Depriest* Court ultimately agreed with the trial court's disposition of the case, they did "not agree that the estate had no legal ownership in Decedent's car." *Id.* at 1025. The court explained as follows:

> When Decedent died, "in the twinkling of a legal eye," the car became an asset of his estate. *Sharps v. Sharps*, 214 So. 2d 492, 495 (Fla. 3d DCA 1968) (holding that an uncashed check payable to the decedent became an asset of his estate the instant he died, and his widow would have to prove that it was a gift to her individually in order to obtain the proceeds for herself). *See also Mills v. Hamilton*, 121 Fla. 435, 163 So. 857, 858 (1935) ("It is well settled that at the death of the owner of any personal property the title thereto vests in his personal representative and during the administration the personal representative is entitled to the possession of the same.").
>
> Although Decedent's car was an asset of the estate, it did not belong to anyone individually. Decedent's will did not bequeath the car to anyone, and his daughter and stepson were co-equal beneficiaries under the residuary clause of the will. Therefore, neither the daughter nor the stepson had any specific right to the car, nor did either of them as individuals have a superior right against the other to prohibit use of the car. The car was an asset of the estate and subject to administration. *In re Vettese's Estate*, 421 So. 2d 737, 738 (Fla. 4th DCA 1982) (holding that property improperly transferred directly to decedent's daughters must be returned to the estate for proper administration under the terms of the will and governing law); *see also* § 731.201(14), Fla. Stat. (2013) (defining "estate" as "the property of a decedent that is subject to administration"); *Blechman v. Estate of Blechman*, 160 So. 3d 152, 157 (Fla. 4th DCA 2015) ("If the subject property will pass either intestate or by way of a will, then it is part of the decedent's probate estate."). Ultimate ownership of the car would not be determined until after resolution of claims, taxes, debts, expenses of administration, and other obligations of the estate, if any. It might have ended up being sold to pay the estate's obligations, no longer belonging to the estate or any beneficiary.

8

*Id.* at 1025-26; *see also Sharps*, 214 So. 2d at 495 (holding that while "it was not improper for" the decedent's wife to deposit the subject check into their joint account during her husband's lifetime, it was improper to deposit the check into the account after her husband died because "that check became an asset of the husband's estate.").

Here, under the reasoning provided in *Depriest* and *Sharps*, the Court cannot conclude that the Estates "stepped into the shoes" of the deceased Blanco Rosell Siblings and maintained the original acquisition date. Indeed, upon the death of each of the Blanco Rosell Siblings, their purported claims to the Confiscated Property "became an asset of [their] [Estates]." *Depriest*, 213 So. 3d at 1025 (citing *Sharps*, 214 So. 2d at 495). And as an asset of their Estates, the claim to the Confiscated Property no longer belonged to the decedents or anyone else individually. *Id.* at 1025-26. Simply put, because the four Blanco Rosell Siblings died after 1996, and their purported claims to the Confiscated Property were not part of their respective Estates before the statutory cutoff, the Estates cannot maintain a cause of action under Title III. For this reason alone, the Motion is due to be denied.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiffs' Motion, **ECF No. [68]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 21, 2021.

_____
BETH BLOOM
UNITED STATES DISTRICT JUDGE

Copies to:

Counsel of Record