**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-cv-25176-BLOOM/Otazo-Reyes**

ODETTE BLANCO DE FERNANDEZ *neé*
BLANCO ROSELL,

    Plaintiff,

v.

SEABOARD MARINE, LTD.,

    Defendant.

_____

**MOTION TO STRIKE
SUPPLEMENTAL EXPERT REPORT OF LORI WOLIN
AND MEMORANDUM OF LAW**

    Defendant Seaboard Marine, Ltd. ("Seaboard Marine") respectfully moves to strike the Supplemental Expert Report of Lori Wolin (the "Wolin Supplemental Report") pursuant to Federal Rules of Civil Procedure 26 and 37.

**I.    INTRODUCTION**

    Pursuant to this Court's scheduling order, on January 11, 2022, Plaintiff served an expert report of Lori Wolin (the "First Wolin Report") purporting to value, for purposes of alleged damages, 1,385 acres of property near the Port of Mariel in Cuba, along with warehouses and a mangrove, at somewhere between $635 million and $4.1 billion.[1] Wolin carried out this exercise despite later acknowledging at a deposition that she is not a trained appraiser, that she knows nothing about Cuba, that she has never valued property outside of Florida, and that the most

---

[1] The Wolin Supplemental Report is attached hereto as Exhibit A.  The First Wolin Report is Exhibit B.

expensive property she ever previously valued was worth between $3-$5 million. She even conceded that she and has no "specialty or expertise" with respect to valuing property in Cuba.

Six weeks later, after Wolin was deposed and shortly before the discovery cut-off, Plaintiff served the Wolin Supplemental Report. Plaintiff did not seek leave of the Court or consent of the Defendant to serve this new report and, despite the name on the face of the document, this was no supplement at all. It was a total redo of the First Wolin Report, relying upon different data, different assumptions, and different methodologies and offering new opinions. **These changes result in multi-billion-dollar changes to her valuation**.

None of the changes were based on new fact evidence discovered after the First Wolin Report was served on January 11, 2022. Rather, this is a blatant attempt to paper over gaping holes in Wolin's original analysis revealed at her deposition and sandbag the Defendant.

While the Federal Rules of Civil Procedure provide for supplementation of expert reports under certain circumstances, Rule 26(e) is not a backdoor for a party to try to bolster or fix a defective report, to offer new opinions or to shore up weaknesses and inadequacies revealed through effective cross-examination. Here, the purported supplement is improper, and the opinions should be struck in their entirety.[2]

## II. BACKGROUND AND PROCEDURAL POSTURE

### A. Plaintiff Served the First Wolin Report

On December 16, 2021, this Court entered an Order Amending Scheduling Order and Certain Pretrial Deadlines ("Amended Scheduling Order"). ECF No. 83. The Amended Scheduling Order required the parties to disclose experts and exchange affirmative expert reports

---

[2] In the event the Court denies this motion, Defendant requests leave to depose Wolin again about her "supplemental" opinions. Defendant also reserves all rights to move to strike all opinions of Wolin under *Daubert*.

on January 11, 2022.  A subsequent order set the deadline for expert rebuttal reports as February 9, 2022.  ECF No. 106.

In accordance with the Amended Scheduling Order, on January 11, 2022, Plaintiff served the First Wolin Report, in which Wolin purported to appraise property in Cuba up to $4.1 billion.  Wolin's valuation contained three prongs:

To value a 1,385 acre plot of land *in Cuba*, Wolin identified some small real estate transactions near several ports *in Florida* over the past 37 years.  She then calculated per acre average prices for those transactions (*e.g.*, in Fort Lauderdale, she calculated an average per acre sale price of approximately $2.9 million; in West Palm she calculated an average per acre sale price of approximately $350,000), and then she multiplied those averages by 1,385 acres in Cuba.  Ex. B at ¶¶ 19-33; Ex. C, Dep. of L. Wolin at 183:25-185:2.

Wolin then valued a mangrove in Cuba based on its purported ability to capture carbon, and warehouses in Cuba based on 2021 sales of property in Florida on which warehouses may sit.  Ex. B at ¶¶ 17-18, 33.

### B.  At Wolin's Deposition, Fatal Deficiencies in the First Wolin Report Are Revealed

Wolin was deposed on January 24, 2022, and her testimony revealed a lack of qualification for these opinions, and significant problems with her assumptions and methodologies.  While these deficiencies will be detailed in a *Daubert* motion, we highlight some of these issues below to demonstrate the reason for and scope of the changes between the First Wolin Repot and the Supplemental Wolin Report.

With respect to qualifications, Wolin is not an appraiser.  She has an MBA and Ph.D. in marketing (with a dissertation in internet advertising and gender studies), has obtained licenses in Florida as a contractor, roofer, realtor, and insurance adjuster, and also has certificates to issue

personality tests. She divides her professional time as a Florida real estate agent specializing in flipping houses owned by her and some co-investors, providing broker-price opinions, and acting as a public insurance adjuster, representing homeowners making claims against insurance companies for property damage. *See* Ex. B ¶¶ 4-10; Ex. C at 23:12-19; 42:1-47:8; 52:24-53:15; 54:6-10; 58:14-21; 62:13-17; 63:17-23; 66:14-21; 68:13-69:3; 74:6-75:10; 79:12-20; 82:21-85:22; 99:12-100:6.

When asked: "Q. And you don't have any specialty or expertise with respect to valuing property in Cuba right?," she candidly answered "A. Correct." Ex. C at 164:6-9. She also testified that she has no information on the real estate market in Cuba, no data with respect to any real estate transactions in Cuba, knows "nothing substantial" about how real estate is transacted in Cuba. *Id.* at 121:5-7; 172:7-9; 176:15-25. Wolin further testified that she has never: studied Cuba; bought, sold, or valued property in Cuba; or taken college or graduate level coursework, or written peer-reviewed materials, related to real estate valuation. She did not rely upon any peer-reviewed resources with respect to methods for valuing property in Cuba. She has never previously valued any property outside of Florida or any property exceeding $3-5 million, and that the only cases where she has previously served as an expert involved small-scale property damage and the standard or care of a real estate agent. Ex. C at 42:19-45:12; 90:21-95:11; 107:18-23; 109:4-117:12; 119:4-121:7; 187:18-190:2.

With respect to methodology, Wolin did not analyze whether the property in Cuba is comparable to the property in Florida (*see e.g.*, Ex. C at 174:10-24); she did not obtain any property sale records from Cuba (*id.* at 176:19-21); she made no adjustments based on the fact that the property is in different markets or that Cuba is not a free market economy (*id.* at 177:1-11; 186:14-187:17); she made no adjustment for the patently obvious differences between a .0148 acre sale of

property in Fort Lauderdale sold in 1986 – one of the sale transactions upon which she relied -- and a hypothetical sale of 1,385 acres of property in Cuba in 2022; and she cannot point to any authority suggesting that her novel valuation approach of importing real estate transactions in Florida to Cuba without adjustments is reliable, generally accepted, scientifically valid, or has ever been used by anyone ever before (*id.* 187:18-190:2).

With respect to her valuation of a mangrove, Wolin testified that she has no experience with respect to valuing mangroves or carbon capture, and she based her analysis on two articles, the authors and reliability of which she knows nothing about. Ex. C at 94:15-22; 157:9-164:25. And with respect to the warehouse, Wolin does not even know how many warehouses she was valuing. Ex. C at 34:19-35:2.

### C. Four Weeks After Wolin's Deposition, Plaintiff Served a "Supplemental" Report Based on New Data, New Assumptions and a New Methodology, and Containing New Opinions

On February 21, 2022—six weeks after the expert report deadline and four weeks after her deposition—Plaintiff served a document labeled as a "supplement" to the January 11, 2022 report. This so-called supplement is not based on any new facts or evidence discovered after January 11, 2022, or any data that was not available at the time of her initial report. Nor is it a rebuttal to any expert report submitted by Defendant, which would have been due on February 9, 2022. *See* ECF No. 106. Nor does it reflect correction of errors. Rather, it is a 17-page "do-over."

#### 1. Wolin Changes Her Criteria for Data Selection and Methodology For Valuing Real Property in Cuba

For the First Wolin Report, Wolin located real estate transactions near five Florida port facilities from 1985 to present, determined the average price per acre of transactions and multiplied that by the number of acres she purports to value in Cuba. In her "supplement," Wolin significantly altered the criteria with respect to the properties she analyzed in Florida, without any explanation

for the reason for the changes. The result is that Wolin's Supplemental Report uses a different data set for her analysis. The following chart summarizes some of these changes[3]:

|  | **First Wolin Report** | **Wolin Supplemental Report** |
|---|---|---|
| Minimum property sale price considered | $100,000 | $10,000 |
| Date range of transaction considered | 1985-present | 2007-present |
| Minimum size of property considered | No minimum. The smallest property Wolin considered was .0148 acres, and 16 of 34 properties she considered were smaller than 1 acre | 1 acre |
| Distance from port, and area considered | Wolin drew irregular polygons of different size around each port | Wolin drew different shaped polygons in what she describes as a 2-mile radius from port |
| Ports considered | Fort Lauderdale, West Palm, Tampa, Jacksonville and Cape Canaveral | Fort Lauderdale, West Palm, Tampa, Jacksonville and Cape Canaveral, Miami, Panama City, Manatee, Pensacola, Fernandina, Key West, Ft. Pierce, St. Petersburg |

Wolin also changed her method. Whereas she previously did nothing to control for outlier transactions, now she purports to have used "boxplot in IBM's statistical program SPSS to determine whether the data contain outliers," and removed outlier transactions from her data set. Ex. A at 10. Also, whereas she previously used the average per acre price in Fort Lauderdale to set the high end of her range and the average per acre price in West Palm to set the low end of her range, she now provides a single average across all ports.

**These changes result in increasing the "low end" of her property valuation by $927 million and reducing the "high end" by $2.7 billion.**

|  | **First Wolin Report (page 15)** | **Wolin Supplemental Report (page 17)** |
|---|---|---|

---

[3] Compare Exhibit B at pages 9-15 and Exhibit A at pages 4-7;10-12, 17.

| Wolin's calculation of adjusted sales price per acre in Florida | Low: $353,314<br>High: $2,877,886<br>Average: $1,22,178 | Average: $924,564 |
|---|---|---|
| Wolin's calculation of the value of 1385 acres in Cuba | Low: $489 million<br>High: $3.99 billion<br>Average: $1.69 billion | $1.28 billion |

Wolin offers no explanation why she could not have done this new and revised analysis in her first report.

### 2.     Changes With Respect to Warehouse Valuation

In her original exercise, Wolin sought to value 918,500 square feet of warehouses in Cuba by looking at sales in 2021 in Florida in which warehousing was allowed. She then used that data to try to deduce a price per square foot of the warehouse. She found an average Florida square foot price of $157.34, which she then multiplied by 918,500 square feet, and concluded the warehouse space in Cuba should be valued at $145 million. Ex. B at ¶ 33; Ex. C at 244:16-245:3.

Wolin now changes her criteria to look at Florida transactions from 2007 forward, with multiple size and location criteria, and then she makes adjustments -- not made in her original report – to take account of the land on which the warehouses are located. She also, for the first time, purports to remove outliers based on the "data's boxplot." Ex. A at 12-13.

Her new calculation yields a square foot price of $4.53, with a total claimed value for the warehouses in Cuba of $4.16 million. Ex. A at 13, 17. In other words, the changes yield a **new valuation that is $140 million lower than her original valuation**. Wolin offers no explanation why she altered her methodology or did not perform this more detailed analysis when she first disclosed here opinions on January 11, 2022.

### 3.     Elimination of the Mangrove Valuation

In her first report, Wolin purported to value a mangrove based on its ability to capture and store carbon. She now states that the value is "unclear" and abandons it. Ex. A at 4.

### 4. A New Attempt to Compare Florida and Cuba

Florida and Cuba have completely different economies and economic systems. In the First Wolin Report, Wolin assumed the Florida and Cuba real estate markets were appropriate comparators without any attempt to compare Florida and Cuba or their respective real estate markets, and did not make any adjustments for any differences in the market. *See generally* Ex. B; *see, e.g.*, Ex. C at 174:18-24; 186:14-187:1.

The Wolin Supplemental Report contains a brand-new section captioned "Florida Real Estate is Comparable With Adjustments." Ex. A at 8-10. This new opinion purports to summarize and compare the two locations with respect to various criteria including access to markets, labor conditions, tax rates, foreign ownership allowance, government investment, infrastructure. She concludes by stating, "I concluded that Florida sales are an appropriate comparison to use in my analysis." *Id*. at 10.

Wolin's newfound ability to opine on broad topics such as Cuban corporate tax rates, the Cuban labor market and the scope of modern infrastructure is suspect, given her testimony that she has never studied the Cuban economy and did not know what economic system Cuba has. *See, e.g.*, Ex. C at 120:21-121:1; 177:1-5. But putting all of that aside, this is a brand-new opinion.

### 5. Wolin Abandons Appraisal Standards

In her initial report, Wolin stated that her valuation exercise "*has been carried out* in accordance with the general Standards of Appraisal Practice (USPAP)." Ex. B. at ¶ 19 (emphasis added). Wolin acknowledges that she is attempting to execute an appraisal despite not being an appraiser. Ex. C at 23:16-19; 53:25-54:2. The USPAP, which provides standards governing appraisals, expressly requires one conducting an appraisal to have "competence" with respect to the assignment, and provides that "In an assignment where geographic competency is necessary, an appraiser who is not familiar with the relevant market characteristics must acquire an

understanding necessary to produce credible assignment results for the specific property type and market involved." Excerpt from Uniform Standards of Professional Appraisal Practice 11 (The Appraisal Found. 2020), attached hereto as Ex. D.

Presumably because questioning revealed that she has no such competence, in the Wolin Supplemental Report, she changes course and says: "*I have attempted* to carry out this valuation in accordance with the general Uniform Standards of Professional Appraisal Practice (USPAP) but, given the circumstances in Cuba, *I am unable to strictly follow the USPAP* for this assignment. My opinion is governed by *the applicable court rules of procedure and evidence rather than the USPAP* and my report should not be considered to be a certified appraisal of the properties at issue." Ex. A at 4 (emphasis added).

Wolin does not identify "the applicable court rules of procedure and evidence" she now purports to follow. *Id*. Nor does she explain why she previously claimed to have followed USPAP but now abandons that.

### 6. Wolin Changes Assumptions to Conclusions

In her first report, Wolin made a number of assumptions. In her supplement, she changes many of those assumptions to conclusions. For example:

- In her first report, Wolin stated "*It is assumed* that the property condition in Cuba is adequate to operate port business." Ex. B at ¶ 14 (emphasis added).

  In her supplement, she changes this to "*It appears that* the property in Cuba is adequate to operate the port business." Ex. A at 3 (emphasis added).

Wolin, who has no expertise with respect to ports or port operations, offers no support for this new conclusion, and no explanation for why she changed this assumption to a conclusion. *See* Ex. C at 137:18-138:7; Ex. A.

- In her original report, Wolin stated that "*We are not aware of*" any information that would suggest environmental contamination and therefore "*assume* no contaminative or

> potentially contaminative uses have been carried out on the property." Ex. B at ¶ 16 (emphasis added).
>
> In her supplement, Wolin claims that "Based on my visual *inspection of the Map* [of the area], *I do not observe* any contaminative or potentially contaminative uses that have been carried out on the property. Ex. A at 4.

Wolin has no experience in environmental contamination, and does not explain how one can could determine the absence of contamination from the only new "map" produced with the Supplemental Report, Exhibit E (produced at WOLIN000211). Wolin also does not claim that this information was unavailable when she provided her original report.

### III. THE WOLIN SUPPLEMENTAL REPORT IS IMPROPER

Under Rule 26(a), Wolin was required to include in her initial report, due on January 11, 2022, "a complete statement of all opinions" she "will express and the basis and reasons for them." Fed. R. Civ. P 26(a)(2)(B)(i).

After an initial report is disclosed, Rule 26(e) requires supplementation of an expert report in a timely fashion if any information is incomplete or incorrect. Fed. R. Civ. P. 26(e)(1)(A). But "a party cannot abuse Rule 26(e) to merely bolster a defective or problematic expert witness report." *Guevera v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 719 (11th Cir. 2019) (quoting *Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-cv-24277, 2016 WL 3102225, at *6 (S.D. Fla. June 2, 2016)); *Potish v. R.J. Reynolds Tobacco Co.*, No. 15-81171-CV, 2017 WL 5952892, at *3 (S.D. Fla. Nov. 30, 2017) (collecting cases).

Rule 26(e) "is not a device to allow a party's expert to engage in additional work, or to annul opinions or offer new ones to perfect a litigating strategy." *Cochran v. The Brinkmann Corp.*, No. 1:08-cv-1790, 2009 WL 4823858, at *5 (N.D. Ga. Dec. 9, 2009). Rather, "[t]he sole, narrow purpose of supplementation is to correct inaccuracies or add information that was not available at the time of the initial report." *Great Lakes Ins. Se v. Rental Boat Corp.*, No. 20-60133-

CIV, 2021 WL 1686926, at *2 (S.D. Fla. Mar. 1, 2021) (citation omitted). Rule 26(e) is limited, and "[s]upplementation is not a device that allows experts to engage in additional work, correct weaknesses in the initial report, or produce information in a belated fashion.…Nor does it allow parties to cure a major omission in the report or remedy an expert's inadequate or incomplete preparation." *Id.* (citation omitted). Courts have thus recognized that supplementation under Rule 26(e) "is not proper if the new opinion is based on evidence that was available when the initial report was disclosed." *Id*. (citation omitted).

Further, when a party fails to provide information required under Rules 26(a) or (e), the evidence should be "automatically excluded unless the failure was substantially justified or harmless," and the non-disclosing party bears the burden of proof on that front. *Great Lakes*, 2021 WL 1686926, at *3 (citing Rule 37(c)(1)); *see Potish*, 2017 WL 5952892, at *2.

Under this framework, the Wolin Supplemental Report should be struck. First, as summarized above, there are very substantial differences between the First Wolin Report and the Wolin Supplemental Report, which necessarily means that the First Wolin Report did not contain a complete statement of all opinions she intends to express.

Second, the Wolin Supplemental Report does not contain narrow corrections of inaccuracies. Rather, and as demonstrated above, both the property valuation and the warehouse valuation rely on new data sets selected with new criteria, changed assumptions, and new and revised methodologies. The Wolin Supplemental Report also contains an entirely new section that purports to compare Cuba and Florida. This is a new opinion, not a corrected one, with changes made in direct response to weaknesses identified at the deposition, and thus constitutes the type of additional work that is well-beyond the scope of supplementation.

Third, the changes are not based on any new evidence unavailable at the time of Wolin's original report. Wolin claims in Section I of her Supplemental Report that "new information and testimony have come to my attention that helps expand and clarify my original report." She does not cite any such testimony. The "new evidence" she cites consists of websites and "high-resolution aerial photographs that assisted my examination of the Cuban land in question." The websites are not new. As to photos, Wolin produced Exhibit E and, although it is undated, it is similar to satellite images relied upon by another of Plaintiff's experts, a cartographer named Scott Edmonds. Compare Exhibit E (Wolin's new photo) with Exhibit F (relied upon by Edmonds). In her first report, Wolin claimed to have relied on Edmonds's January 11, 2022 report, which makes clear that the photograph is not new evidence. Even if the photograph were new, it has nothing to do with any of the new or changed opinions.

Plaintiff has no justification for the delay in the full disclosure of the opinions proffered by Wolin, and the late disclosure is clearly prejudicial. Discovery is nearly complete. Wolin has already been deposed, and the work that Defendant did to identify weaknesses in her report have been revealed. The Wolin Supplemental Report is improper and was submitted merely to bolster a defective or problematic expert witness report. It should be struck.

## IV.  CONCLUSION

The Wolin Supplemental Report is improper and it should be struck as beyond permissible supplementation.

### CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

Counsel for Seaboard Marine has conferred with Plaintiff's counsel about the relief requested in this Motion in accordance with Local Rule 7.1(a)(3), and Plaintiff opposes the relief requested.

Dated: March 2, 2022

*s/ Robert M. Brochin*
Robert M. Brochin
Florida Bar No. 0319661
bobby.brochin@morganlewis.com
Matthew Papkin
Florida Bar No. 106565
matthew.papkin@morganlewis.com
Justin Stern
Florida Bar No. 1010139
justin.stern@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
600 Brickell Avenue
Suite 1600
Miami, Florida 33131-3075
Telephone:  305.415.3000
Facsimile:  305.415.3001

Carl A. Valenstein (admitted *pro hac vice*)
carl.valenstein@morganlewis.com
One Federal Street
Boston, MA 02110
Telephone:  617.341.7700
Facsimile:  617.341.7701

Brian A. Herman (admitted *pro hac vice*)
brian.herman@morganlewis.com
101 Park Avenue
New York, NY 10178
Telephone: 212.309.6000
Facsimile:  212.309.6001

Veronica J. Lew (admitted *pro hac vice*)
veronica.lew@morganlewis.com
1000 Louisiana St., Ste 4000
Houston, TX 77002
Telephone: 713.890.5000
Facsimile: 713.890.5001

*Counsel for Defendant Seaboard Marine, Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed this 2nd day of March 2022 via the CM/ECF system, which will electronically serve a copy on all counsel of record.

*s/ Robert M. Brochin*
Robert M Brochin