UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-25176-BLOOM/Otazo-Reyes

ODETTE BLANCO DE FERNANDEZ *née*
BLANCO ROSELL,

    Plaintiff,

v.

SEABOARD MARINE, LTD.,

    Defendant.

_____/

**REPLY IN SUPPORT OF DEFENDANT SEABOARD MARINE, LTD.'S
MOTION TO STRIKE PLAINTIFF'S DEPOSITION ERRATA**

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 2

    I.    The Errata Changes Are Improper, Material Changes Without Good Cause ........ 2

          1.    Plaintiff's Errata Changes are Material and Contradictory ........................ 3

          2.    Plaintiff Lacks Good Cause for the Errata Changes ................................. 6

    II.    The Opposition Makes Irrelevant and False References to Other Filings ............. 9

CONCLUSION ........................................................................................................................... 10

# INTRODUCTION

Plaintiff seeks billions of dollars in damages based on allegations that she was a partial owner of Maritima Mariel, a Cuban company from which the Government confiscated concession rights granted to the company in 1955. (Am. Compl. ¶¶ 4, 67-68, ECF No. 45.) Plaintiff also alleged that she owned Azucarera Mariel and its subsidiary Central San Ramon, and land owned by those companies. (*Id.* ¶¶ 4, 71.) During discovery, Defendant Seaboard Marine sought evidence showing that Plaintiff owned Maritima Mariel or other properties in Cuba, as alleged. At Plaintiff's deposition, she was asked questions relating to whether she ever owned that company or any other property in Cuba. While Plaintiff remarkably describes questions relating to ownership of Maritima Mariel and other properties as "gotcha" tactics, Plaintiff's acquisition an ownership interest in Maritima Mariel is necessary for her Title III claim. Plaintiff testified at her deposition that she does not know if she owned Maritima Mariel. Because Plaintiff has no personal knowledge or documentary evidence showing an ownership interest in Maritima Mariel, Plaintiff resorted to changing her sworn testimony by submitting errata changes stating that she was an equal owner with her four brothers of the "family businesses."

Putting aside the many distractions in the Opposition, Plaintiff's substantive argument is that the errata changes are not material or inconsistent with Plaintiff's deposition testimony because she testified at her deposition that she was an equal owner of the "family businesses." (*See, e.g.*, Opp'n 2 ("[s]he had already testified that she was an equal owner" of the "family businesses", 4 ("Fernandez testified . . . that she was an equal owner in her family's businesses", 8 ("Plaintiff testified she owned the family businesses and their assets that Cuba confiscated", 15 ("Fernandez's repeated testimony identifying her ownership of all the assets of her family businesses . . . .") Tellingly, the Opposition does not **cite to Plaintiff's deposition transcript** to show that "testimony." (*See id.*) It does ***not*** exist. Plaintiff did not testify that she owned all the

1

assets of the "family businesses." Rather, Plaintiff attempts to inject new and inconsistent facts through improper errata changes to create an issue of fact for summary judgment (but fails to, for the reasons stated in Seaboard Marine's Motion for Summary Judgment). The changes should be struck because Plaintiff lacks good cause for making material and contradictory changes.

## ARGUMENT

### I. The Errata Changes Are Improper, Material Changes Without Good Cause

Courts in the Eleventh Circuit are divided as to whether Rule 30(e)(1)(B) permits only correction of typographical or transcriptional errors, absent a showing of witness confusion or also permits substantive changes. *Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*, 2016 WL 7443291, at *1 (S.D. Fla. Dec. 14, 2016). But under either approach, material and contradictory errata changes are impermissible absent good cause.

In her 17-page Opposition, Plaintiff fails to address most cases cited in Seaboard Marine's Motion. And Plaintiff gets wrong the case she does address, arguing that *Eldridge v. Pet Supermarket, Inc.* stands for the proposition that "clarifying the record" is a justification for **material** changes. (Opp'n 12.) But *Eldridge* **struck** errata changes made with the stated reason of "clarifying the record" that were material changes, not clarifications. *Eldridge v. Pet Supermarket, Inc.*, 2019 WL 3302348 at *2 (S.D. Fla. July 23, 2019). The Court explained that "the record is not merely 'clarified' when the testimony is entirely altered to reflect a completely different answer." *Id.* Plaintiff ignores other cited cases holding material and contradictory changes made without good cause are impermissible. *Rezendes v. Domenick's Blinds & Decor, Inc.*, 2015 WL 3484835, at *7 (M.D. Fla. June 2, 2015) (striking errata sheets and refusing to "consider the proposed changes" at summary judgment because the changes were material and contradictory and plaintiff lacked good cause); *Travelers Indem. Co. of Connecticut v. Attorney's Title Ins. Fund, Inc.*, 2016 WL 866368, at *7 (M.D. Fla. Mar. 7, 2016) ("attempted changes to Ms. Vesely's

2

deposition testimony are substantive, contradictory, and inappropriate"); *Maronda Homes, Inc. of Fla. v. Progressive Exp. Ins. Co.*, 2015 WL 4167377, at *3 (M.D. Fla. July 9, 2015) ("the court's rejection of the use of a Rule 30(e) errata sheet to make material and contradictory changes to deposition testimony is part of the law of the circuit.").

The cases cited in the Opposition do not hold that material changes are permitted without good cause.  In *Ethicon Physiomesh Flexible Composite Hernia Mesh Prod. Liab. Litig. v. Ethicon, Inc.*, the Court permitted clarifications where "the 444-page transcript contains numerous instances where the audio was muffled or inaudible" and because of the deponent's "German accent." 2020 WL 9887566, at *6-*7 (N.D. Ga. Dec. 4, 2020).  In *Chavez v. Arancedo*, "thirteen of the fourteen . . . changes were neither material nor prejudicial." 2018 WL 11346673, at *3 (S.D. Fla. May 24, 2018).  As to the only material change, the court held that it was "not prejudicial" but nevertheless "re-open[ed] the Defendant's deposition."  *Id.*  In *AIG Centennial Ins. Co. v. O'Neill*, the court "require[d] the deponent to pay the costs and fees associated with re-opening the deposition" to address material errata changes.  2010 WL 4363176, at *5 (S.D. Fla. Oct. 22, 2010).[1]

### 1. Plaintiff's Errata Changes are Material and Contradictory

Plaintiff's errata changes are material and inconsistent with her testimony.  (*See* Mot. 4-5.) Plaintiff testified that she does not know whether she was an owner of Maritima Mariel or Azucarera Mariel.  (*Id.*)  She also testified that **her father** purchased the Ramona Sugar Mill, Central San Ramon, and Tapia, and he owned those properties until they were confiscated.  (ECF No. 155-3 at 75:16-76:2, 77:7-12, 86:8-11, 106:24-107:5, 120:5-7.)[2]  The errata changes contradict

---

[1]  Plaintiff also cites *Architectural Ingenieria Siglo XXI, LLC*, 2016 WL 7443291 and *Cultivos Yadran S.A. v. Rodriguez*, 258 F.R.D. 530 (S.D. Fla. 2009).  (Opp'n 11 n.4.)  But these cases did not address contradictory errata changes.

[2]  Plaintiff testified that she did not recall what percentage of Central San Ramon her father owned when he fled Cuba after the confiscation.  (ECF No. 155-3 at 85:15-18.)

3

that testimony and attempt to inject that Plaintiff and four of her brothers each owned 20 percent of the "family businesses" and that her father never owned properties that she testified he purchased.

***Azucarera Mariel and Maritima Mariel***.  Plaintiff changed her testimony that she never heard of the company Azucarera Mariel and that she was not a shareholder of Maritima Mariel to "I do not recall the names of all of the family businesses, but I do recall that I was an equal owner in the family's businesses with my four brothers." (Mot. 4-5.)  Plaintiff argues that "[t]hese errata changes are consistent with Ms. Fernandez's repeated testimony identifying her ownership of all the assets of her family businesses . . . ." (Opp'n 15.)  But there is no such testimony.  Plaintiff did not testify that she owned all of the family businesses, and she certainly never testified that she owned Azucerera Mariel or Maritima Mariel.  To the contrary, she testified that her father, not Plaintiff, ***was the owner*** of certain properties.  For example, she testified that he purchased the Ramona Sugar Mill and owned it until it was confiscated. (ECF No. 155-3 at 75:16-77:12.)  And Plaintiff testified that she and her husband sold Tapia to her father. (*Id.* at 89:15-94:6, 120:5-7.)[3]

Plaintiff argues that the changes are permissible because the testimony is not "entirely altered to reflect a completely different answer." (Opp'n 15 (quoting *Eldridge*, 2019 WL 3302348 at *2).)  In *Eldridge*, the court struck material changes in the errata and permitted clarifications that were "not material enough to trigger a violation of Rule 30," such as a change from "Yes" to "[b]ased on my recollection now, generally, yes." *Eldridge*, at *2-*3.  Here, the answer "I don't know" is "completely different" than the statement in the errata that Plaintiff and her brothers

---

[3] At most, Plaintiff testified that she was one of the owners of the company Central San Ramon, and one of the owners of the Mariel dock. (Opp'n 4-5.)  The Mariel dock was located on the east side of the Bay of Mariel—on the opposite site of the Bay from the Container Terminal where Seaboard Marine transported chicken and donation items. (Seaboard Marine's Mot. Summ. J. at 20-22, ECF No. 177.)

4

owned all the "family properties." Indeed, courts have held that errata changes providing substantive responses that replace "I don't know" testimony are contradictory and not permitted. *See, e.g.*, *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 271 (3d Cir. 2010) (change of "I don't know that I really thought about it...." to "Yes—I would take the letter to be a guarantee of payment" is contradictory); *Teleshuttle Techs. LLC v. Microsoft Corp.*, 2005 WL 3259992, at *2 (N.D. Cal. Nov. 29, 2005) (same as to change of "'[C]an't recall' to 'Yes'"); *see also Maronda Homes, Inc. of Fla.*, 2015 WL 4167377, at *4 (change of "'No' to 'I don't know'" is contradictory).

***Plaintiff's Father's Ownership Interest***. Plaintiff acknowledges that she testified her father was a shareholder in certain companies and that her errata states the opposite—that her father was not a shareholder. (Opp'n 5, 13.) Nevertheless, Plaintiff argues these changes are not "material" because they "do[] nothing to contradict, rebut, or change Ms. Fernandez's testimony that she also owned her family's businesses and their assets." (*Id.* at 13.) But again there was no such testimony by Plaintiff. Moreover, had Plaintiff testified that she was an owner of all family businesses, whether her father was an owner of the family businesses is material because it affects Plaintiff's ownership share and contradicts Plaintiff's errata submission that she and her four brothers each held a 20% ownership interest in the "family businesses."

***The Rosell-Siblings' 20% ownership interests***. Plaintiff argues that errata changes stating that she and her brothers each owned 20% of "family businesses" are not material or contradictory because "Seaboard [Marine] already knew those ownership percentages from Ms. Fernandez's interrogatory responses." (Opp'n 13-14.) However, Plaintiff's interrogatory answers claim only that Plaintiff and her brothers each owned 20% of Maritima Mariel and Azucarera Mariel; they do not address any other businesses or properties, such as Ramona or Tapia. (Pl.'s Resp. to Interrog. No. 2(b), ECF No. 179-5.) Moreover, Plaintiff has not cited case law permitting material changes

5

to deposition testimony for the purpose of making that testimony consistent with interrogatory responses. That lacks any logical basis because Plaintiff's interrogatory responses are not based on her personal knowledge. In Plaintiff's original verification, she averred that the interrogatory answers were, in part, "based on an investigation undertaken on [Plaintiff's] behalf." (Pl.'s Resp. to Interrog. at "Verification," ECF No. 179-5.) Regardless Plaintiff treated Seaboard Marine's interrogatories as contention interrogatories, stating that Plaintiff's answers "need not—indeed should not—be limited to [Plaintiff's] personal knowledge" but rather "must include information that is immediately available" including "through h[er] attorney." (ECF No. 108 at 9.)

*Plaintiff did not read the interrogatory responses*. Plaintiff testified that she did not even read the interrogatories responses that she had verified were true because she did not realize she was supposed to. (ECF No. 155-3 at 177:4-18.) She changes that testimony in her errata to state that Plaintiff's niece read the interrogatory responses to her. (ECF No. 112 at 10-11.) The Opposition baldly claims that change is immaterial, without any argument to support the contention. Plaintiff's failure to read the interrogatory answers is critical because the interrogatory responses are not based on Plaintiff's personal knowledge and they may not be considered in regard to Seaboard Marine's pending motion for summary judgment. (ECF No. 177 at 10-11.) The Opposition seems to take the position that Plaintiff's deposition testimony left unanswered whether the interrogatory responses were read to Plaintiff as opposed to read by Plaintiff. (Opp'n 14.) That is belied by Plaintiff's response to the question of whether Plaintiff read the interrogatory responses by asking whether she was supposed to have read the interrogatory responses. Plaintiff's errata change is not consistent with her testimony. (ECF No. 155-3 at 177:4-18.)

2. **Plaintiff Lacks Good Cause for the Errata Changes**

Plaintiff failed to state the reasons for the errata changes, which is required by Rule 30(e)(1)(b). (ECF No. 108-8.) After the 30-day deadline for errata changes had passed, Plaintiff

served an amended errata adding her reasons for changing the testimony.[4] (ECF No. 112.) In the Opposition—months after the errata were served—Plaintiff now asserts a host of reasons for the changes, some absent from the amended errata.

The purported reason for most of Plaintiff's errata changes is to bring the testimony "in line with my other testimony and the documents in the case." (*See generally* ECF No. 112.) No case cited by Plaintiff permitted material and contradictory errata changes for that reason. Regardless, the proposed changes do no such thing.

Plaintiff claims that she testified she owned all of the "family businesses." (Opp'n 2, 4, 8, 15.) As discussed above, Plaintiff did not testify to that. The Opposition points to imaginary testimony that Plaintiff "received annual dividends as a shareholder" of some unidentified company. (Opp'n 10.) Plaintiff actually testified that at annual family gatherings she, her brothers, and her mother were given $5,000. (Dec. 14 Dep. of Pl., at 47:10-17, 49:3-12, ECF No. 179-4.) According to Plaintiff's interrogatory responses, her mother (who received the yearly $5,000) was not an owner of Azucarera Mariel or Maritima Mariel. (Pl.'s Resp. to Interrog. Nos. 2(b)-(c), ECF No. 179-5.) As such, the $5,000 gift cannot show Plaintiff owned all family businesses.

The errata changes are also not "in line" with documents produced in the case. The documents Plaintiff cites do not show ownership of any Cuban properties by Plaintiff. (Opp'n 13 n.5.) The Confiscation Decree does not state whether Plaintiff owned any particular company in

---

[4] Plaintiff argues that Seaboard Marine has filed four motions regarding the issue of Plaintiff's errata changes. (Opp'n at 2 n.1.) But prior to the instant Motion, the only instance the appropriateness of the errata changes was raised was during a discovery hearing noticed by Seaboard Marine. Magistrate Otazo-Reyes found that Plaintiff's errata submission was "incomplete" but decided to "let the errata sheet go" on the issue of timeliness because her "biggest concern is not to impinge in the sphere of the district judge." (Ex. 1, Feb. 24 Hr'g Tr. at 13-14.) The Magistrate clarified that her ruling is "limit[ed] to the timeliness issue" and is "deferring on the substance" so Seaboard Marine "can approach Judge Bloom on that." (*Id.* at 16-17.)

Cuba. (ECF No. 177 at 13.) And other documents Plaintiff previously filed suggest that she was *not* an owner of property in Cuba. (*Id.* at 11-12.) Plaintiff also cites four additional documents. Two Cuban newspaper articles merely report the Confiscation Decree, which speaks for itself and does not identify any Cuban property owned by Plaintiff. (ECF Nos. 179-11, 179-12.) The two letters pertaining to a company called Fronsa Corp. do not mention Plaintiff. (ECF No. 179-13.)[5]

Plaintiff suggests that references in her deposition testimony to "the port of Mariel," the "business," and "San Ramon" somehow show that Plaintiff was an owner of all properties owned by anyone in her family, including distinct companies and properties such as Tapia, Maritima Mariel, and Azucarera Mariel. (Opp'n 6-7.) The Opposition cherry-picks and takes out of context quotations spanning over pages of deposition testimony, providing an incorrect citation to "Dec. 14, 66:1-22" to conceal that the testimony is separated by multiple pages. (*Id.* at 6-7.) Regardless, Plaintiff did not indicate whatsoever that she owned all of the family businesses.

Plaintiff argues that the question "Well, were you ever a shareholder in the company known as Maritima Mariel SA?" contains a "false premise." (*Id.* at 15.) Plaintiff's counsel did not object to the form of the question at deposition. (ECF No. 155-3 at 125:8-10.) Plaintiff contends she believed for this question only that she was required to answer "yes" or "no." (Opp'n 16-17.) That mistaken belief, however, would not justify Plaintiff's errata change, which includes the new material statement that "I do recall that I was an equal owner in the family's businesses with my four brothers." (ECF No. 112 at 7.)

---

[5] Plaintiff claims the errata changes are consistent with testimony by Plaintiff's nieces and nephew. The Opposition states that Eduardo Blanco testified "that his father, his uncles, and Aunt Odette owned the family business." (Opp'n 15 n.8.) But Eduardo actually testified that he was referring to Eduardo's "father and his brothers." (ECF No. 179-10 at 46:22-23.) Liana Blanco and Emma Blanco each testified that their knowledge of the family's ownership of property in Cuba was based on hearsay. (ECF No. 179-9 at 35:18-23, 36:3-6; ECF No. 179-8 at 31:16-32:6.)

Finally, Plaintiff argues that counsel did "not have an opportunity to question [Plaintiff] following Seaboard's counsel's questioning." (Opp'n 16.) That was not a stated basis for any errata changes, likely because it is not a justification. It is also false. Plaintiff's counsel decided not to question the witness on December 17th or the next day. (Mot. 2 n.2.)[6] Plaintiff states in the Opposition that she was departing for a vacation the day after the deposition, but neither Plaintiff nor her counsel mentioned that at the time. (ECF No. 155-3 at 179:10-185:8.) In any event, if Plaintiff's counsel wished to take Plaintiff's deposition again Plaintiff needed to raise the discovery dispute before Magistrate Otazo-Reyes. Indeed, Plaintiff set the dispute for a hearing (ECF No. 99), but withdrew the notice the night prior and instead submitted errata changes seeking to avoid dismissal. (M. White Jan. 27 E-Mail, ECF No. 155-6; Ex. 2, M. Papkin Jan. 27 E-Mail.) Months later, well after the close of discovery and on the deadline for dispositive motions, Plaintiff's claim to "reserve[] the right to request permission to compete Ms. Fernandez's deposition" lacks merit.[7]

## II.     The Opposition Makes Irrelevant and False References to Other Filings

As pure distraction, Plaintiff argues that "Seaboard has made numerous untrue and misleading representations in Court filings." (Opp'n 7.) These references are not to the Motion at issue. Nevertheless, Seaboard Marine corrects Plaintiff's mischaracterizations of the record.

---

[6]     Plaintiff argues that she was tired "at the end of her *five plus hours* of deposition questioning" and that Seaboard Marine was playing "gotcha" by asking Plaintiff whether she owned the Cuban companies at issue. (Opp'n 10.) In fact, Plaintiff's testimony totaled 3 hours and 19 minutes. (ECF No. 155-3 at 4:5, 50:14-17, 88:20-23, 129:17-22, 170:22-25, 185:15.) Counsel for Seaboard Marine repeatedly reminded the deponent and her counsel not to hesitate to take breaks and that he did not want the witness to feel uncomfortable in any way. (*Id.* at 16:12-20, 50:5-12.) Neither the witness nor her counsel at any point during the deposition mentioned that she was tired or uncomfortable until Seaboard Marine concluded its questioning.

[7]     In the event that the Court is not inclined to strike the errata, the errata changes should not be considered for purposes of summary judgment because they were made for the improper purpose of avoiding dismissal after Seaboard Marine filed its motion to dismiss for lack of subject matter jurisdiction. (ECF No. 177 at 9.)

Plaintiff claims it is "untrue" that she "testified she did not own the Cuban property at issue." (Opp'n 7.) But she testified that she did not own Maritima Mariel, which was granted the concession rights Plaintiff alleges Seaboard Marine trafficked in. (Am. Compl. ¶ 4.) Presumably to show that Plaintiff owned the property at issue, the Opposition cites testimony that Plaintiff's family owned the "Mariel dock" and a "[c]oncession to develop the Mariel dock," (Opp'n 7) which is on the opposite side of the Bay from the Container Terminal and which Seaboard Marine never used (ECF No. 177 at 19-22). She also cites testimony that she and her family owned Central San Ramon, but Central San Ramon held no concession rights or any land that Seaboard Marine used.

Plaintiff claims it is "untrue" that "there is no evidence that Plaintiff possessed an ownership interest in these companies[,]" citing testimony that she received $5,000 per year from some business. (*Id.* at 7-8.) As discussed above, her mother also received that annual gift and was not an owner of Maritima Mariel or Azucarera Mariel. (ECF No. 179-5 at Nos. 2(b)-(c).) Plaintiff also cites the same testimony that she and her family owned the "Mariel dock" and a concession to develop the Mariel dock and Central San Ramon. (Opp'n 8.) But the 1955 Concession at issue was granted to Maritima Mariel, which Plaintiff testified she did not own.

Plaintiff claims it is "misleading" that "Plaintiff testified that she has no knowledge of Maritima Mariel, S.A. or Compania Azucarera Mariel S.A. or whether she had an ownership interest." (Opp'n 8.) Plaintiff states that she "testified she owned the family businesses and their assets that Cuba confiscated." (*Id.*) Not true; there is no such testimony. Seaboard Marine's characterization of Plaintiff's sworn testimony is entirely correct—that is, Plaintiff has no personal knowledge of Maritima Mariel or Azucarera Mariel or whether she ever owned those companies.

## CONCLUSION

Seaboard Marine respectfully requests that the Court strike the Feb. 8th Errata Sheet and the Jan. 27th Errata Sheet.

Dated: April 15, 2022

*s/ Robert M. Brochin*
Robert M. Brochin
Florida Bar No. 0319661
bobby.brochin@morganlewis.com
Matthew Papkin
Florida Bar No. 106565
matthew.papkin@morganlewis.com
Justin Stern
Florida Bar No. 1010139
justin.stern@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
600 Brickell Avenue
Suite 1600
Miami, Florida 33131-3075
Telephone:  305.415.3000
Facsimile:  305.415.3001

Carl A. Valenstein (admitted *pro hac vice*)
carl.valenstein@morganlewis.com
One Federal Street
Boston, MA 02110
Telephone:  617.341.7700
Facsimile:  617.341.7701

Brian A. Herman (admitted *pro hac vice*)
brian.herman@morganlewis.com
101 Park Avenue
New York, NY 10178
Telephone: 212.309.6000
Facsimile:  212.309.6001

Veronica J. Lew (admitted *pro hac vice*)
veronica.lew@morganlewis.com
1000 Louisiana St., Ste 4000
Houston, TX 77002
Telephone: 713.890.5000
Facsimile:  713.890.5001

*Counsel for Defendant Seaboard Marine, Ltd.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2022, the foregoing was filed via CM/ECF, which will serve via e-mail a copy on all counsel of record.

*s/ Robert M. Brochin*
Robert M. Brochin