UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-25176-BLOOM/Otazo-Reyes

ODETTE BLANCO DE FERNANDEZ *née*
BLANCO ROSELL,

    Plaintiff,

v.

SEABOARD MARINE, LTD.,

    Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION TO STRIKE
PLAINTIFF'S DEMAND FOR JURY TRIAL**

**THIS CAUSE** is before the Court upon Defendant Seaboard Marine, Ltd.'s ("Defendant") Motion to Strike Plaintiff's Demand for Jury Trial, ECF No. [156] ("Motion"). Plaintiff Odette Blanco De Fernandez *née* Blanco Rosell ("Plaintiff") filed a Response in Opposition, ECF No. [174] ("Response"), to which Defendant filed a Reply, ECF No. [186] ("Reply"). The Court has reviewed the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motion is denied.

**I.  BACKGROUND**

    ***a.  Title III of the Libertad Act***

Since Fidel Castro seized power in Cuba in 1959, Cuba has been plagued by "communist tyranny and economic mismanagement," that has substantially deteriorated the welfare and health of the Cuban people. *See* 22 U.S.C. §§ 6021(1)(B), (1)(A)(2); 22 U.S.C. § 6081(3). The communist Cuban Government has systematically repressed the Cuban people through, among other things, "massive and systemic violations of human rights" and deprivations of fundamental freedoms, *see*

*id.* §§ 6021(4), (24), and the United States has consistently sought to impose effective international sanctions for these violations against the Castro regime, *see id.* §§ 6021(8)-(10).

In 1996, Congress passed the Title III of the Cuban Liberty and Democratic Solidarity Act of 1996, 22 U.S.C. § 6021, *et seq.* (the "LIBERTAD Act," "Title III," or the "Act"), commonly referred to as the Helms-Burton Act, "to strengthen international sanctions against the Castro government" and, relevant to the instant case, "to protect United States nationals against confiscatory takings and the wrongful trafficking in property confiscated by the Castro regime." 22 U.S.C. §§ 6022(2), (6). To that end, under Title III of the Act, Congress denounced the Cuban Government's history of confiscating property of Cuban citizens and U.S. nationals, explaining that "[t]he wrongful confiscation or taking of property belonging to United States nationals by the Cuban Government, and the subsequent exploitation of this property at the expense of the rightful owner, undermines the comity of nations, the free flow of commerce, and economic development." 22 U.S.C. § 6081(2). The Act explains that foreign investors who traffic in confiscated properties through the purchase of equity interests in, management of, or entry into joint ventures with the Cuban Government to use such properties "complicate any attempt to return [these expropriated properties] to their original owners." *Id.* §§ 6081(5), (7). The LIBERTAD Act cautions that:

> [t]his "trafficking" in confiscated property provides badly needed financial benefit, including hard currency, oil, and productive investment and expertise, to the current Cuban Government and thus undermines the foreign policy of the United States—
> (A) to bring democratic institutions to Cuba through the pressure of a general economic embargo at a time when the Castro regime has proven to be vulnerable to international economic pressure; and
> (B) to protect the claims of United States nationals who had property wrongfully confiscated by the Cuban Government.

*Id.* §§ 6081(6)(A)-(B).

Further, the lack of effective international remedies for the wrongful confiscation of property and for unjust enrichment from the use of that property by foreign governments at the

2

expense of the rightful owners left U.S. citizens without protection against wrongful confiscations by foreign nations and their citizens. *Id.* § 6081(10). Congress therefore concluded that, "[t]o deter trafficking in wrongfully confiscated property, United States nationals who were the victims of these confiscations should be endowed with a judicial remedy in the courts of the United States that would deny traffickers any profits from economically exploiting Castro's wrongful seizures." *Id.* § 6081(11). As a result, in passing Title III of the LIBERTAD Act, "Congress created a private right of action against any person who 'traffics' in confiscated Cuban property." *Garcia-Bengochea v. Carnival Corp.*, 407 F. Supp. 3d 1281, 1284 (S.D. Fla. 2019).

> Shortly after Helms-Burton was passed, however, the President invoked Title Ill's [suspension] provision, and "Title III has since been waived every six months, . . . and has never effectively been applied." *Odebrecht Const., Inc. v. Prasad*, 876 F. Supp. 2d 1305, 1312 (S.D. Fla. 2012). That changed on April 17, 2019, when the U.S. Department of State announced that the federal government "will no longer suspend Title III." *See* U.S. Department of State, Secretary of State Michael R. Pompeo's Remarks to the Press (Apr. 17, 2019), https://www.state.gov/remarks-to-the-press-11/.

*Id.*; *see also* 22 U.S.C. § 6085(c) (presidential power to suspend the right to bring a cause of action under Title III). Thus, for the first time on May 2, 2019, the suspension of claimants' rights to bring actions under Title III was lifted, thus enabling them to file suit against alleged traffickers. *Garcia-Bengochea*, 407 F. Supp. 3d at 1284.

The International Claims Settlement Act ("Settlement Act"), 22 U.S.C. §§ 1621, *et seq.*, established the Foreign Claims Settlement Commission ("FCSC") to adjudicate claims against foreign governments that involve the expropriation of property belonging to nationals of the United States. *See Dames & Moore v. Regan*, 453 U.S. 654, 680–81 (1981) (discussing history of FCSC). In 1964, Congress amended the Settlement Act "to provide for the determination of the amount and validity of claims against the Government of Cuba . . . which have arisen since January 1, 1959 . . . ." 22 U.S.C. § 1643. The Settlement Act tasks the FCSC with determining "the amount

and validity of claims by nationals of the United States against the Government of Cuba . . . arising since January 1, 1959 . . . for losses resulting from the nationalization . . . [of] property including any rights or interests therein owned wholly or partially, directly or indirectly at the time by nationals of the United States." 22 U.S.C. § 1643b(a). A claim certified by the FCSC under the Settlement Act serves as both conclusive proof of ownership of a property interest and as the presumptive measure of damages under the LIBERTAD Act. 22 U.S.C. §§ 6082(a)(2), 6083(a)(1). Title III claims are not limited to those who hold a claim certified by the FCSC, but the certified claims are conclusive proof of an ownership interest, and the amount of the claim—relevant to Title III's damages calculations—carries a statutory presumption of correctness rebuttable only by clear and convincing evidence. *Id.*

      b. *This Case*

On December 20, 2020, Plaintiff initiated this action against Defendant to recover damages under Title III. *See* ECF No. [1]; *see also* ECF No. [45] ("Amended Complaint"). According to the Amended Complaint, Plaintiff and her four siblings (collectively, "Blanco Rosell Siblings") owned various corporations and assets in Cuba that were confiscated by the Cuban Government in 1960. *See* ECF No. [45] ¶¶ 4, 14, 66-73 ("Confiscated Property"). Plaintiff, the estates of the four Blanco Rosell Siblings, and the descendants of the four Blanco Rosell Siblings all sought to hold Defendant liable under Title III for "trafficking" in the Confiscated Property. *See* 22 U.S.C. § 6082(a)(1)(A). Following a Motion to Dismiss Plaintiffs' Amended Complaint, ECF No. [52], the Court entered an Order permitting only Plaintiff's claim against Defendant to proceed. ECF No. [66].

Defendant filed the instant Motion to strike Plaintiff's jury demand. *See generally* ECF No. [156]. In the Motion, Defendant argues that Title III does not confer a right to a jury trial and,

4

further, that the Seventh Amendment does not provide a right to a jury trial. *Id.* Plaintiff does not dispute that Title III does not provide a statutory right to a jury trial but avers that the Seventh Amendment provides a right to a jury trial for a Title III action. *See generally* ECF No. [174].

## II.     LEGAL STANDARD

The right to a jury trial arises from a statutory grant or the Seventh Amendment. Courts addressing this issue must first analyze the statute to "ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999) (citing *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 345 (1998); *Tull v. United States*, 481 U.S. 412, 417, n.3, (1987); *Curtis v. Loether*, 415 U.S. 189, 192, n.6 (1974)). If the language and legislative history of the statute are silent regarding the right to a jury trial, the court "must [then] answer the constitutional question presented." *Tull*, 481 U.S. at 417 n.3. That is, the court must determine whether the Seventh Amendment applies. *See AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1373-74 (11th Cir. 2021) (quoting *City of Monterey*, 526 U.S. at 718).

The Seventh Amendment provides that for "[s]uits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989). As stated by the Supreme Court in *Parsons v. Bedford*, 3 Pet. 433, 446-47 (1830), the phrase "common law" as used in the Seventh Amendment was intended to stand in contrast to suits in equity. Accordingly, "common law" in this context translates into "suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Granfinanciera, S.A.*, 492 U.S. at 41 (internal quotations, citation, and emphasis omitted). The right to a jury trial thus extends to causes of action where the statute creates

5

legal rights and legal remedies, even when the statute does not expressly create the right to a jury trial. *Curtis*, 415 U.S. at 193-94.

In determining whether the claim in question sounds in law, courts must compare the action to "18th-century actions brought in the courts of England prior to the merger of the courts of law and equity," and second, examine "the remedy sought and determine whether it is legal or equitable in nature." *Granfinanciera*, S.A., 492 U.S. at 42 (quoting *Tull*, 481 U.S. at 417-18). The question is whether these two considerations suggest that an action concerns a legal right with legal remedies and thus confer a right to a trial by jury under the Seventh Amendment. *Id.*

However, a court's analysis of the two *Granfinanciera* factors must take into consideration that while Congress is constitutionally precluded from stripping the right to a jury trial for the adjudication of private rights, the same is not true insofar as public rights are concerned. *Id.* at 51-52. Where Congress "devise[s] a novel cause of action involving public rights" and tasks adjudication of the novel cause of action to a tribunal lacking statutory authority to employ a jury as the factfinder, no right to a jury trial attaches to the cause of action. *Id.* at 51-52. Public rights include those seemingly private rights created by Congress that are "so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary." *Id.* at 54. In the context of such administrative proceedings, the Supreme Court has observed that "jury trials would be incompatible with the whole concept of administrative adjudication and would substantially interfere with the [administrative agency]'s role in the statutory scheme." *Curtis*, 415 U.S. at 194 (citing *NLRB v. Jones F& Laughlin Steel Corp.*, 301 U.S. 1 (1937)) (alteration added). In sum, "[u]nless Congress . . . has permissibly withdrawn jurisdiction over [an] . . . action by courts of law and assigned it

exclusively to non-Article III tribunals sitting without juries, the Seventh Amendment guarantees [litigants] a jury trial upon request." *Granfinanciera*, S.A., 492 U.S. at 49.

Therefore, in determining the right to a jury trial, courts must address: (1) whether the statute at issue demonstrates congressional intent to permit a trial by jury; (2) whether the right and the remedy are legal in nature; and (3) whether Congress has permissibly delegated adjudication of any claims pursuant to the statute to an alternative tribunal in which a jury trial is unavailable.

**III.     ANALYSIS**

It is undisputed that Title III does not grant a statutory right to a jury trial. *See Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, No. 1:19-CV-23591, 2022 WL 708386, at *4 (S.D. Fla. Jan. 11, 2022), *report and recommendation adopted*, No. 19-CV-23591, 2022 WL 499710 (S.D. Fla. Feb. 18, 2022). Accordingly, the Court's analysis will focus on whether the Seventh Amendment applies to confer the right to a jury trial.

Defendant argues that the Seventh Amendment does not entitle Plaintiff to a jury trial. ECF No. [156] at 6. Defendant acknowledges this Court's holding in *Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, No. 19-CV-23591, 2022 WL 499710 (S.D. Fla. Feb. 18, 2022)—finding that the right to a jury trial extends to a cause of action brought under Title III—but asks the Court to reconsider its decision. ECF No. *See* ECF No. [156] at 2. Specifically, Defendant contends that this Court should find that Plaintiff is not entitled to a jury trial under the Seventh Amendment because claims and statutory remedies under Title III are equitable in nature and there is no common law equivalent to actions brought under Title III. *See id.*

Plaintiff responds that Title III creates a private right of action to which the right to a jury trial attaches. *See* ECF No. [174] at 3-6. Specifically, Plaintiff avers that the Seventh Amendment

applies because the cause of action under Title III resembles many common law torts and other statutory causes of action in which courts have ruled that the Seventh Amendment applies to grant a trial by jury. *See generally* ECF No. [174]. Further, Plaintiff contends that the remedy under Title III is legal in nature. *See id.* at 7-14.

### c. *Legal Right*

Defendant first argues that there is no analogous common law clause of action from the 18th century to the private statutory cause of action created in Title III of the Helms-Burton Act. *See* ECF Nos. [156] at 8-10, [186] at 4-6. Defendant's primary contention is that a cause of action brought under Title III, unlike any common law causes of action, creates a claim against a third-party, not the wrongdoer (namely the Cuban government). *See* ECF Nos. [156] at 8, [186] at 4-5. Further, Defendant avers that a claim under Title III is distinguishable from existing common law claims because Title III allows plaintiffs to sue for the current fair market value of property confiscated more than sixty years ago, regardless of the amount of time "trafficking" occurred or whether the defendant caused harm to plaintiff. *See* ECF No. [156] at 8.

Defendant also argues that a claim under Title III falls within the public rights exception to the Seventh Amendment, which does not extend the right to a jury trial, "because the express purpose of the Helms-Burton Act is to seek actions against Cuba and bring about democratic reform." *Id.* at 9. Defendant contends that Title III's public nature is highlighted by the fact that the President or the election of a democratic government in Cuba can extinguish a plaintiff's cause of action. *See id.* (citing 22 U.S.C. § 6082(h)(1)(B)). And Title III directs excess payments by Cuba (under any agreement entered into regarding certified claims) to be deposited into the United States Treasury, instead of paid to the individual whose property was confiscated. *See id.* (citing

8

22 U.S.C. § 6082(g)).[1] Defendant argues, therefore, that Title III is not analogous to any common law cause of action and establishes rights that are more analogous to public rights because Title III is "fundamentally a part of a public rights scheme regarding the United States' foreign policy objectives regarding Cuba." *See id.*

Plaintiff responds that the claim has numerous features that compare favorably to traditional actions at law, namely trespass on the case, trover, trespass *quare clausum fregit*, and ejectment. *See* ECF No. [174] at 3. Plaintiff also argues that although Title III involves novel features, the cause of action is analogous in every relevant aspect to common law torts. *See id.* at 4. Plaintiff avers that Title III causes of action are analogous to common law tort actions despite that tort-feasors are necessary parties in common low tort actions and in Title III actions the tort-feasor— Cuban government—is a non-party. *See id.* at 5. Lastly, Plaintiff argues that although Title III is animated in part by public interest goals, it still confers a right to a jury trial because it provides legal rights and remedies. *See id.* at 5-6. Further, Plaintiff avers that the public rights exception does not apply because Title III expressly vests only Article III courts with the authority to adjudicate those causes of action. *See id.* at 6 (citing 22 U.S. § 6082).

Defendant's Reply echoes the arguments made in its Motion and further argues that the right to a jury trial does not extend to Title III actions because they involve public rights "closely intertwined with a federal regulatory program Congress has to power to enact." *See* ECF No. [186]

---

[1] Defendant does not indicate how this relates to the Court's analysis regarding whether Title III confers a legal right. This contention is more appropriately considered by the Court in regard to whether Title III confers a legal remedy. To the extent Defendant argues that the damages should be characterized as disgorgement because the Act contains language preventing traffickers from keeping any profits, the Court is not persuaded. The remedy in this case is not tied to Defendant's profits but the value of the property interest. As the Supreme Court recently stated, equitable disgorgement is characterized by a "remedy tethered to a wrongdoer's net unlawful profits.*" Liu v. Sec. & Exch. Comm'n*, 140 S.Ct. 1936, 1943 (2020). Because the remedy is not related to Defendant's profits in this case, the damages cannot be considered equitable disgorgement.

9

at 5-6 (quoting to *Granfinanciera, S.A.*, 492 U.S. 33, 54 (1989)). Specifically, Defendant points to the FCSC's authority to assess and certify claims. *See id.* at 6. Defendant avers that the FSCS's certification of claims, taken together with the purposes of Title III, show that Congress created a private right that is so closely intertwined with public rights and policies that the public rights exception applies. *Id.*

The Court agrees with Plaintiff and finds that Title III provides a legal right. The Supreme Court held in *Chauffeurs, Teamsters, & Helpers, Local No. 391 v. Terry* that "[t]he Seventh Amendment question depends on the nature of the *issue* to be tried rather than the character of the overall action." 494 U.S. 558, 569 (1990) (emphasis in original) (*citing Ross v. Bernhard*, 396 U.S. 531, 538 (1970)). In this case, the issues that must be tried are similar to those involving traditional tort claims: duty, breach, and damages. That is, Plaintiff must prove Defendant's duty to refrain from trafficking in the Confiscated Property, Defendant's breach of that duty, and Plaintiff's damages. Even though Title III may involve novel aspects, such that the claim is against a self-styled "third-party" (i.e., Defendant), not the "wrongdoer" (i.e., the Cuban Government), and that the President or diplomatic developments may foreclose Plaintiff's right to the claim, the specific issues that must be tried—which are the focus of the Court's analysis—indicate that the claim being adjudicated is analogous to common law tort claims. In sum, although not an exact match, the elements of each common law tort claim highlighted by Plaintiff resemble the elements of a Title III claim, such that a claim under Title III is considered analogous to common law torts claims.

Moreover, even were the Court to deviate from the Supreme Court's express holding to focus on the *issue* to be tried and determine that there exist many novel features that distinguish this claim from common law tort claims, it is apparent that this claim has no analogs to actions in

equity. When there are no historical analogs to actions in law or equity, the Supreme Court has stated that the Seventh Amendment should be construed to embrace the action in question as an action at law. *See Curtis*, 415 U.S. at 193 (quoting *Parsons*, 3 Pet.at 446-47) ("In a just sense, the [Seventh] [A]mendment . . . may well be construed to embrace all suits which are not of equity and admiralty jurisdiction, whatever might be the peculiar form which they may assume to settle legal rights."). Therefore, Defendant's argument regarding the lack of analogous cases in common law is unavailing.

Lastly, to the extent that Defendant argues that the nature of rights under Title III are "public rights" to which a Seventh Amendment right to jury trial does not attach, the Court is unpersuaded by that argument. The public rights exception to the right to a jury trial for legal causes of action arises when certain public rights are implicated, and Congress elects to entrust adjudication to an alternative administrative process or a special court in equity; in this instance the alternative process would be frustrated rather than aided by the imposition of the jury as a factfinder. *Granfinanciera*, 492 U.S. at 53-54. Although Title III allows an administrative agency to determine certain aspect of the claim, that is not enough to bring Title III into the purview of the public rights exception.

> [T]hough Congress delegated to the FCSC the ability to render determinations as to claim value in the Act, it created no federal regulatory scheme for an alternative non-Article III adjudicative process insofar as liability is concerned—to the contrary, the statute explicitly confers the right to bring suit in an Article III court—and there is accordingly no alternative administrative process to be hampered by the imposition of a jury as a factfinder.

*Havana Docks Corp.*, 2022 WL 499710, at *4 (citing *Havana Docks Corp.* 2022 WL 708386, at *4). The text of the statute itself makes clear that Title III entrusts "the courts of the United States" with the task of resolving claims under the Act. 22 U.S.C. § 6081(11). While the FCSC may

11

determine a part of the claim, there is no alternative non-Article III adjudicative process. In other words, the Court is not convinced that the FCSC's involvement makes this Court's adjudication of the claim to be "so closely integrated into a public regulatory scheme" such that the claim would be "appropriate for agency resolution with limited involvement by the [this Court]." *Granfinanciera, S.A.*, 492 U.S. at 54 (quoting authority omitted). Further, the Court finds that Title III is "animated by foreign policy considerations and potentially impacted by them." *Havana Docks Corp.*, 2022 WL 708386, at *6.

While Defendant correctly argues that Title III allows the President or a change in government in Cuba to suspend causes of actions under Title III, these elements do not change the fundamental character of Title III: to provide a right to plaintiff whose confiscated property was "trafficked" by defendant. Similar to common law tort actions, Title III provides a cause of action for a plaintiff following interference with their protected personal or property interests. *Id.* at *5. As such, the Court finds that a claim under Title III is not "so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary." *Granfinanciera*, S.A., 492 U.S. at 54 (quoting authority omitted). In sum, a Title III claim involves a legal right.

### d. Legal Remedy

Defendant raises several arguments regarding whether Title III provides a legal remedy. Defendant argues the mere fact that a party could be awarded a money judgment under Title III does not make the nature of relief legal, and in turn, entitle parties to a jury trial. *See* ECF Nos. [156] at 6, [186] at 2. Next, Defendant directs the court to the language of 22 U.S.C. § 6081(8) which states that Title III was created because "[t]he international judicial system, as currently structured, lacks fully effective remedies for the wrongful confiscation of property and **for unjust**

Case 1:20-cv-25176-BB   Document 241   Entered on FLSD Docket 06/22/2022   Page 13 of 17

Case No. 20-cv-25176-BLOOM/Otazo-Reyes

**enrichment from the use of wrongfully confiscated property** by governments and private entities at the expense of the rightful owners of the property." *See* ECF No. [156] at 6 (emphasis in original). Defendant argues that the text of this statute evidences that the relief afforded under Title III is equitable in nature because it was created to protect from "unjust enrichment." *See id.* 6-7. Defendant further argues that because the measure of damages is based on current property value, the remedy is akin to equitable restitution that takes into consideration the increase in value. *See* ECF Nos. *id.* at 7-8, [186] at 2-3.

Plaintiff argues that Title III calls for a legal remedy because it only provides for monetary damages, which are "the classic form of legal relief." ECF No. [174] at 7 (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993)). Plaintiff also argues that Congress' inclusion of the ability to seek treble damages under Title III, 22 U.S.C. § 6082(a)(3), is highly relevant to the Court's analysis into the type of remedy afforded by Title III, because treble damages cannot be sought in a court of equity. *See* ECF No. [174] at 7 (citing *Fleitmann v. Welsbach St. Lighting Co. of Am.*, 240 U.S. 27, 29 (1916)). Plaintiff further contends that Title III's reference to "unjust enrichment" does not mean that the relief available under Title III is equitable in nature. *Id.* at 8-9. Plaintiff avers that the relief provided for by Title III is not equitable in nature simply because it provides for monetary damages based on the current value of the confiscated property, a relief that Defendant characterizes as "restitutionary." *Id.* at 9-10. Further, even if these damages were considered "restitutionary," they would resemble restitution at law. *Id.* Plaintiff cites to this Court's decision in *Havana Docks Corp.* and argues that the "damages contemplated by Title III are legal in nature because 'they compensate Plaintiff for its loss instead of returning to Plaintiff the very thing to which it is entitled.'" ECF No. [174] at 10 (quoting 2022 WL 499710, at *5). Lastly, Plaintiff

argues that damages based on harm suffered by a plaintiff, rather than proceeds received by a defendant, are legal relief. *Id.* at 11.

Defendant's Reply echoes the arguments made in its Motion and addresses Plaintiff's argument regarding treble damages. ECF No [186] at 3. Defendant argues that the Fifth Circuit Court of Appeals held in *Swofford v. B&W, Inc.*, 336 F.2d 406, 412 (5th Cir. 1964) that the fact that a statute provides for punitive damages does not grant a party a right to a jury trial. ECF No. [186] at 3. Defendant further argues that *Fleitmann* and *Curtis*, two cases cited by Plaintiff which involve statutes providing for treble damages, hold that the right to a jury trial is a statutory right that depends on the text of the particular statute in question, rather than a Seventh Amendment right. *See id.* at 3-4 (citing *Fleitmann*, 240 U.S. at 29 and *Curtis*, 415 U.S. 189, 196-97).

The Court agrees with Plaintiff and finds that Title III provides a legal remedy. The Supreme Court has determined that:

> [o]ur cases have long recognized the distinction between an action at law for damages—which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation—and an equitable action for specific relief—which may include an order providing for the reinstatement of an employee with backpay, or for 'the recovery of specific property *or monies,* ejectment from land . . . '

*Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988) (emphasis in original) (quoting *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 688 (1949)). In this case, it is apparent that Title III's monetary damages are intended to compensate Plaintiff's suffered loss, namely the loss of her property interest. By allowing a monetary award for the current value of the property interest, rather than the property interest itself, Title III seeks to compensate Plaintiff for her loss instead of returning to Plaintiff the "very thing" to which she is entitled. *Bowen*, 487 U.S. at 893.

The Court considers such a monetary award to be a compensatory, legal remedy.[2] Title III also does not involve the restoration of specific monies that were wrongfully withheld, akin to backpay or unpaid employment benefits. That is, the case will not result in an order compelling the payment of wrongfully withheld monies, which would be considered an equitable remedy that requires the payment of money only as a practical matter. Rather, Title III permits monetary damages to compensate Plaintiff for her injury, which is clearly not a belated payment of wrongfully withheld sums of money.

Next, Defendant's argument that Title III includes provisions indicating that it is intended to provide an equitable remedy to cure "unjust enrichment" is also unavailing. *See* ECF No. [156] at 6. As Plaintiff correctly notes, 22 U.S.C. § 6081 lays out Congress's general findings concerning the subject matter of Title III, and the term "unjust enrichment" is used to describe in general terms Congress's reasoning for passing the statute into law. ECF No. [174] at 8. The liability for trafficking in confiscated property claimed by United States nationals is clearly articulated in 22 U.S.C. § 6082, which states that a plaintiff can seek *money damages* as a result of a violation of Title III. Specifically, Title III explicitly provides for a monetary award for the current value of the property interest, rather than the property interest itself. *Bowen*, 487 U.S. at 893.

Lastly, the Court is not persuaded by Defendants' argument regarding treble damages and its reliance on *Fleitmann*, 240 U.S. at 29 and *Curtis*, 415 U.S. 189, 196-97. As this Court pointed out in in *Havana Docks Corp.*, the Supreme Court held that "actual and punitive damages are

---

[2] To the extent that Defendant argues that Plaintiff seeks as damages the current value of the property and such damages are akin to equitable restitution, *see* ECF Nos. [156] at 7-8, [186] at 2-3, the Court is not persuaded. Defendant cites to no legal authority that definitively establishes that a remedy that takes into account the increase in the value of confiscated property is an equitable remedy. *See id.* Even if the Court were to adopt Defendant's position on this issue, this argument alone would fail to overcome the presumption that monetary damages are traditionally a remedy afforded to actions at law. *See Feltner*, 523 U.S. at 352; *Granfinanciera*, 492 U.S. at 46.

15

traditional form[s] of relief offered in the courts of law." 2022 WL 499710, at *7 (internal quotations omitted) (quoting *Curtis*, 415 U.S. at 196). To reiterate, Defendant argues that that the right to a trial by jury for a statute involving treble damages is a statutory right that depends on the text of the particular statute in question, rather than a Seventh Amendment right. *See* ECF No. [186] at 3-4. However, in *Curtis*, the Supreme Court held that "actual and punitive damages" are "traditional form[s] of relief offered in the courts of law." *Curtis*, 415 U.S. at 196. The Supreme Court determined that punitive damages provided a legal remedy, and that the Seventh Amendment entitled either party to a jury trial. *See id.* This case is similarly a case in which the Court must determine whether there is a Seventh Amendment right to a jury trial. Therefore, consistent with Supreme Court precedent in *Curtis*, the Court concludes that the Act's provision for treble damages, which are punitive damages, provides a legal remedy and the Seventh Amendment entitles Plaintiff to a jury trial.

Further, Defendant's reliance on *Swofford.*, 336 F.2d at 412, to argue that treble damages do not establish the right to a jury trial, is similarly unavailing. *See* ECF No. [186] at 3. *Swofford* did not categorically state that punitive damages foreclosed a jury trial. Rather, punitive damages may or may not entitle litigants to a jury trial. *Id.* at 412 ("[W]e find no authority for the proposition that the parties enjoyed a constitutional right to jury trial on the award and amount of exemplary damages. Quite to the contrary, the cases indicate that Congress has fluctuated, with approval by the Supreme Court, between jury trial and no jury trial on the question of exemplary damages in patent actions."). The Fifth Circuit in *Swofford* ultimately held that treble damages in that particular case did not confer the right to a jury trial because the case involved a statute that expressly consigned the question of treble damages to the presiding judge instead of the jury. *See id.* at 413. *Swofford* was decided on the first inquiry that asks whether the statute at issue expressly

demonstrates congressional intent to permit a trial by jury. *Id.* The first inquiry is not relevant in this case, and *Swofford*, therefore, is inapposite.

The Court finds that the stated goal of "deter[ring] trafficking" and treble damages ultimately weigh in favor of finding that the Act sets forth a punitive, legal remedy. *See* 22 U.S.C. § 6081(11); *Curtis,* 415 U.S. at 196. As such, the Court finds that a claim under Title III involves a legal remedy and a legal right. Accordingly, actions under Title III are afforded a right to a jury trial under the Seventh Amendment.

## IV. CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. Defendant's Motion, **ECF No. [156]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 21, 2022.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record