### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

**Case No. 20-cv-25176-BLOOM/Otazo-Reyes**

ODETTE BLANCO DE FERNANDEZ *née*
BLANCO ROSELL,

      Plaintiff,

v.


SEABOARD MARINE, LTD.,

      Defendant.

_____/

### <u>ORDER ON MOTION TO INTERVENE</u>

**THIS CAUSE** is before the Court upon Plaintiff Odette Blanco de Fernandez's Motion to

Vacate Summary Judgment and Final Judgment, ECF No. [302] ("Motion to Vacate"), filed on

March 24, 2023. A Response in Opposition was filed by nonparties Crowley Holdings, Inc.,

Crowley Maritime Corp., Crowley Liner Services, Inc., Crowley Latin America Services, LLC,

Crowley Logistics, Inc., MSC Mediterranean Shipping Company S.A., Mediterranean Shipping

Company (USA) Inc., CMA CGM S.A., and CMA CGM (AMERICA) LLC (collectively,

"Intervenors"). ECF No. [335]. Plaintiff thereafter filed a Reply. ECF No. [336]. The Court has

considered the Motion to Vacate, the Response, the Reply, the record in this case, the applicable

law, and is otherwise fully advised. For the reasons set forth below, the Motion to Vacate is denied.

### I.      BACKGROUND

On December 20, 2020, Plaintiff initiated this action against Defendant Seaboard Marine,

Ltd. ("Defendant") to recover damages and interest under the Helms-Burton Act for trafficking in

property confiscated by the Cuban Government. *See* ECF No. [1]; *see also* ECF No. [45]

("Amended Complaint"). According to the Amended Complaint, Plaintiff and her four siblings

(collectively, "Blanco Rosell Siblings") owned various corporations and assets in Cuba that were confiscated by the Cuban Government in 1960. *See* ECF No. [45] ¶¶ 4, 14, 66. Plaintiff, the estates of the four Blanco Rosell Siblings, and the descendants of the four Blanco Rosell Siblings sought to hold Defendant liable for "trafficking" in the Confiscated Property. *See* 22 U.S.C. § 6082(a)(1)(A).

On July 27, 2021, the Court dismissed the claims of the estates and heirs of Plaintiff's deceased brothers, leaving Plaintiff as the sole Plaintiff in this case. ECF No. [66] ("Motion to Dismiss Order"). On August 19, 2022, the Court granted summary judgment in favor of Defendant in a 37-page Order. ECF No. [268] ("Summary Judgment Order"); ECF No. [270] ("Final Judgment").

Plaintiff appealed the Summary Judgment Order and Final Judgment, and the heirs of Plaintiff's deceased brothers appealed the Court's Motion to Dismiss Order. ECF No. [271]. The Appeal is pending before the Eleventh Circuit Court of Appeals, Case No. 22-12966.

On September 28, 2022, the Eleventh Circuit scheduled the Appeal for mandatory mediation. ECF No. [302-1]. During mediation, the parties reached a settlement agreement that is expressly conditioned upon this Court vacating the Summary Judgment Order and Final Judgment. ECF No. [302] at 3.

On March 24, 2023, Plaintiff filed before this Court the Motion to Vacate. ECF No. [302]. Therein, Plaintiff, with Defendant's agreement, requests that the Court issue an Order indicating that the Court intends to vacate its Summary Judgment Order and Final Judgment, so that the parties can petition the Eleventh Circuit to remand for that purpose. *Id*. at 4 (citing Fed. R. Civ. P. 60(b)).

Intervenors sought leave to intervene under Fed. R. Civ. P. 24 to oppose the Motion to Vacate. ECF No. [303]. The Court granted that motion to intervene, finding that although Intervenors did not have a right to intervene under Rule 24(a), permissive intervention was appropriate under Rule 24(b). ECF No. [334]. The Court therefore permitted Intervenors to file a Response in opposition to Plaintiff's Motion to Vacate. *Id*. at 14.

In their Response, Intervenors argue that the Motion to Vacate is "a blatant, costly, and self-serving effort to game the judicial system[.]" ECF No. [335] at 7. They assert that post-judgment vacatur is appropriate only in exceptional circumstances, which are not present in this case. *Id*. at 13. They further argue that the public interest is not served by vacatur. *Id.* at 19.

## II.    LEGAL STANDARD

Fed. R. Civ. P. 60(b) sets forth the grounds for seeking relief from a final judgment, order, or proceeding. When a Rule 60(b) motion filed in the district court is directed toward orders and judgments on appeal, the following procedure applies:

> [F]ollowing the filing of a notice of appeal[,] district courts do not possess jurisdiction to grant a Rule 60(b) motion. Accordingly, a district court presented with a Rule 60(b) motion after a notice of appeal has been filed should consider the motion and assess its merits. It may then deny the motion or indicate its belief that the arguments raised are meritorious. If the district court selects the latter course, the movant may then petition the court of appeals to remand the matter so as to confer jurisdiction on the district court to grant the motion.

*Mahone v. Ray*, 326 F.3d 1176, 1180 (11th Cir. 2003). This procedure has been codified in the Eleventh Circuit's Rules of Appellate Procedure. *See* 11th Cir. R. 12.1-1.

## III.    DISCUSSION

In her Motion to Vacate, Plaintiff seeks vacatur of the Court's Final Judgment and Summary Judgment Order, in which the Court concluded that Plaintiff lacked an ownership interest in the property that forms the basis of her claim arising under the Helms-Burton Act. ECF

3

No. [268] at 19-23. Intervenors oppose vacatur because they wish to use the Summary Judgment Order for collateral estoppel purposes in separate lawsuits that Plaintiff has brought against them. ECF No. [335] at 7. Intervenors disparage Plaintiff's Motion to Vacate as an attempt to "game the judicial system" and "buy and bury" the decisions against her. ECF No. [335] at 7. Plaintiff takes umbrage at Intervenors' characterization of her strategy, but she does not dispute that the purpose of her Motion to Vacate is to eliminate the Summary Judgment Order's preclusive effects in other cases. ECF No. [334] at 6.

In *U.S. Bancorp Mortgage Company v. Bonner Mall Partnership*, 513 U.S. 18 (1994), the Supreme Court generally disapproved of attempts "to vacate civil judgments of subordinate courts in cases that are settled after appeal is filed or certiorari sought." *Id.* at 19. The *Bancorp* Court explained that vacatur is an equitable remedy, which will ordinarily not be appropriate when "the losing party has voluntarily forfeited" her appellate rights by reaching a settlement agreement. *Id.* at 25. That is because:

> Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur. Congress has prescribed a primary route, by appeal as of right and certiorari, through which parties may seek relief from the legal consequences of judicial judgments. To allow a party who steps off the statutory path to employ the secondary remedy of vacatur as a refined form of collateral attack on the judgment would—quite apart from any considerations of fairness to the parties—disturb the orderly operation of the federal judicial system.

*Id.* at 26 (quotation marks and internal citation omitted). Therefore, it is the movant's burden "to demonstrate . . . equitable entitlement to the extraordinary remedy of vacatur." *Id.* at 26.

The Eleventh Circuit has rejected the contention that *Bancorp* created a bright-line rule requiring denial of motions to vacate that are predicated on a voluntary, post-judgment settlement agreement. *Hartford Cas. Ins. Co. v. Crum & Forster Specialty Ins. Co.*, 828 F.3d 1331, 1336

(11th Cir. 2016). Rather, the Eleventh Circuit instructs courts to "determine the propriety of granting vacatur by weighing the benefits of settlement to the parties and to the judicial system (and thus to the public as well) against the harm to the public in the form of lost precedent." *Id.* The Court proceeds with the weighing of the private and public interests that favor or disfavor vacatur.

### A. The Parties' Interests

As an initial matter, the parties in this case indisputably wish to settle their dispute, and Plaintiff asserts that settlement would be "impossible" without vacatur. ECF No. [302] at 4 ¶ 15. Accepting Plaintiff's assertion as true (for now), vacatur certainly furthers the parties' "direct and substantial benefit of settling this case[.]" *Hartford Cas.*, 828 F.3d at 1336. However, as the Supreme Court made clear, the litigants' settlement agreement, by itself, does not amount to "equitable entitlement to the extraordinary remedy of vacatur." *Bancorp*, 513 U.S. at 26.

In *Hartford Casualty*, the Eleventh Circuit found "two unusual features of the settlement agreement" between the litigants which, in combination, "tip[ped] the scales decisively in favor of vacat[ur]." 828 F.3d at 1336. First, the parties "did not begin their negotiations leading to settlement unprompted." *Id.* Rather, the Eleventh Circuit had twice referred the parties to mediation prior to reaching a settlement agreement. *Id.* Second, the *Hartford Casualty* court found that "both parties to the settlement desire[d] vacatur because settlement would otherwise be impossible." *Id.*

Plaintiff asserts that "[t]he circumstances here are the same as those in *Hartford Casualty*[.]" ECF No. [302] at 8. Here, as in *Hartford Casualty*, the parties' settlement agreement was prompted by mediation that was mandated by the appellate court. *Id.* And here, like the movant in *Hartford Casualty*, Plaintiff asserts that "settlement would be terminated without vacatur." *Id.*

5

However, Intervenors convincingly distinguish the routine process that led to the settlement agreement in this case from the "exceptional circumstances" described in *Hartford Casualty*. 828 F.3d at 1336. In *Hartford Casualty*, the parties initially refused to settle after participating in the Eleventh Circuit's routine mediation program. *Id.* at 1333. After oral argument, and fourteen months later, the Eleventh Circuit panel *sua sponte* ordered the parties to mediate a second time. *Id*. at 1336. It was during that second round of mandated mediation that the parties reached a settlement agreement contingent on vacatur. *Id.*

Here, by contrast, the parties reached their agreement during a mediation routinely ordered by the Eleventh Circuit. *Hartford Casualty* does not support the proposition that *any* agreement reached through the Eleventh Circuit's routine mediation process constitutes "exceptional circumstances" to justify vacatur. *Id*. at 1336. Were that the case, virtually *every* case that settles on appeal during mediation would qualify as "exceptional." Moreover, such a broad reading of *Hartford Casualty* cannot be squared with *Bancorp's* strong disapproval of motions to vacate "as a refined form of collateral attack" that departs from Congress's "prescribed . . . primary route, by appeal as of right and certiorari, through which parties may seek relief from the legal consequences of judicial judgments." *Bancorp*, 513 U.S. at 392. Rather, the better reading of *Hartford Casualty* is that it was the Eleventh Circuit's second and case-specific referral to mediation, after oral argument, that constituted an exceptional circumstance which "weigh[ed] heavily in favor of vacat[ur]." 828 F.3d at 1336. That circumstance is not present in this case.

The Court turns to the second consideration noted in *Hartford Casualty* that weighed heavily in favor of vacatur: the court's conclusion that, absent vacatur, "settlement would otherwise be impossible." *Id.* at 1336. The Eleventh Circuit did not provide an explanation as to how the panel reached the conclusion that the parties' settlement agreement would be impossible

absent vacatur. However, the Court agrees with Intervenors that it cannot suffice for a movant to merely *assert* that "[i]t is impossible for the Parties to settle their differences" without vacatur, as the parties have done in this case. ECF No. [302] at 4 ¶ 15. The parties must set forth facts or circumstances supporting such an assertion. Otherwise, *every* settlement agreement with such a provision would amount to an "exceptional circumstance," which would render meaningless the term "exceptional." *See Chapman v. Doe*, 143 S. Ct. 857, 858 (2023) (mem.) (Jackson, J., dissenting) (opining that vacatur must be limited "to truly exceptional cases."). Moreover, in *Bancorp*, the Supreme Court explicitly instructed that "exceptional circumstances do not include the mere fact that the settlement agreement provides for vacatur[.]" *Bancorp*, 513 U.S. at 29. Here, the Court sees no facts or argument that would support Plaintiff's conclusory statement that settlement would be impossible absent vacatur.

Having considered the private interests of the parties requesting vacatur, the Court finds no exceptional circumstances that would "weigh heavily" in favor of vacatur. *Hartford Casualty*, 828 F.3d at 1336. Rather, the circumstances that led to the parties' settlement agreement in this case are more aptly described as "routine."

### B. The Public Interest

The Court turns to consider the public interest. According to *Bancorp*, "public interest" is generally best served when parties wishing to attack a judgment do so via the "primary route, by appeal as of right and certiorari[.]" 513 U.S. at 27. "To allow a party who steps off the statutory path to employ the secondary remedy of vacatur as a refined form of collateral attack on the judgment would—quite apart from any considerations of fairness to the parties—disturb the orderly operation of the federal judicial system." *Id*.

In *Hartford Casualty*, the Eleventh Circuit discussed two public interest considerations: (1) the public interest in preserving precedent, and (2) the public interest of "advancing the efficiency of the federal courts." 828 F.3d at 1337. Regarding the first interest, the *Hartford Casualty* court found the precedential value of the district court's opinion in that case to be "slight," because it was a "ruling on questions of state contract law[.]" *Id.* at 1336. As to the second interest, settlement furthered judicial efficiency by allowing "previously committed judicial resources" to be "made available to deal with other matters[.]" *Id.*

Here, the Court finds that the first public interest—the preservation of precedent—strongly disfavors vacatur in case. Unlike the district court's decision in *Hartford Casualty*, the decision the Court is being asked to vacate is not a "ruling on questions of state contract law" with slight precedential value. *Id.* at 1336. Rather, the Court's Summary Judgment Order applies federal law, namely, Title III of the Cuban Liberty and Democratic Solidary Act of 1996 ("the Helms-Burton Act"). *See generally* ECF No. [268]. The Court interpreted a specific provision of that law, 22 U.S.C. § 6082(a)(1)(A). *Id.* at 10. The Summary Judgment Order includes a choice of law analysis, in which the Court concluded that federal common law, rather than Cuban law, governs the interpretation of the concession that forms the basis of Plaintiff's claim. *Id.* at 16-19. Ultimately, the Court determined that Plaintiff did not have an ownership interest in the property upon which Defendant allegedly trafficked. *Id.* at 19-23.

Even if Plaintiff is correct that "the centerpiece of the Court's ruling was its interpretation" of a 70-year-old Cuban government concession, this was not a routine resolution of a contractual dispute as in *Hartford Casualty*. ECF No. [336] at 7. Rather, as Intervenors correctly point out, the Court's Summary Judgment Order addressed a "nascent" area of federal law that had remained dormant for over twenty years but is currently experiencing a wave of litigation. ECF No. [335] at

21. The Summary Judgment Order therefore has "outsized value for plaintiffs and defendants alike in understanding the scope of a Title III cause of action[.]" *Id*. at 15.

Moreover, due in part to the novelty of the federal issues, it is true that the Court invested significant judicial resources in analyzing the facts, reviewing the law, and authoring its Summary Judgment Order. ECF No. [335] at 17. In her Reply, Plaintiff argues that the "Court's efforts were ***not*** wasted. The Court's decisions . . . made this negotiated resolution possible." ECF No. [336] at 7-8 (emphasis in the original). That argument appears to contradict the parties' request to have this Court discard its result. "Plaintiff and Defendant came before this Court and asked it to adjudicate a dispute they had been unable to resolve[.]" *Norfolk S. Ry. Co. v. Brampton Enters*., No. 07-cv-155, 2009 WL 249811, at *1 (S.D. Ga. Feb. 2, 2009). This was not a simple dispute. The case was pending before this Court for nearly two years with multiple motions heard and resolved. As noted, resolving Defendant's Motion for Summary Judgment required the Court to devote tremendous resources to evaluate the parties' arguments, examine thousands of pages of exhibits, and resolve novel issues of law. *See, e.g.*, ECF Nos. [177], [178], [180], [181], [182], [183], [184], [197], [198], [199], [200], [201], [202], [218], [219], [220], [222], [227]. The Court did not undertake that task as the parties' private mediator. Rather, "[t]he public paid for this use of court resources through its tax dollars." *Zinus, Inc. v. Simmons Bedding Co*., No. 07-cv-3012, 2008 WL 1847183, at *2 (N.D. Cal. Apr. 23, 2008). Therefore, the Summary Judgment Order is "not merely the property" of the litigants, to be used as a bargaining chip in their settlement negotiations. *Bancorp*, 513 U.S. at 26 (quotation marks omitted).

Turning to the second public interest factor discussed by *Hartford Casualty*, the Court finds that vacatur in this case would not advance "the efficiency of the federal courts." 828 F.3d at 1337. Plaintiff is correct that settlement would save judicial resources in one sense because it would

resolve the pending case on appeal between Plaintiff and Defendant, as well as a separate case between Plaintiff and Defendant's parent company. ECF No. [302] at 2, 8.

At the same time, however, vacatur would waste judicial resources because it would eliminate the Summary Judgment Order's collateral estoppel effects in separate cases that Plaintiff has brought against other defendants. Collateral estoppel "promot[es] judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979) (citation omitted). "As [the Supreme] Court and other courts have often recognized, res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citation omitted). The Court agrees with Intervenors that the Summary Judgment Order's collateral estoppel effects are appropriately considered as a public interest factor that disfavors vacatur.

There are at least five pending cases in which the Summary Judgment Order may have collateral estoppel effects: 1:21-cv-22778 (S.D. Fla.), 1:21-cv-20443 (S.D. Fla.), 1:22-cv-6305 (S.D.N.Y.), 2:21-cv-00339 (E.D. La.), and 1:21-cv-01052 (D. Del.).[1] In three cases in which Intervenors are defendants, they have asked the respective courts to apply collateral estoppel to preclude relitigation of the issues decided in the Summary Judgment Order. See ECF No. [335] at 9-10. One of those cases is stayed pending this Court's decision on Plaintiff's Motion to vacate. *See* Case No. 1:22-cv-06305 (S.D.N.Y. March 30, 2023). Another case is pending. Case No. 1:21-cv-20443 (S.D. Fla.). In the third case, Magistrate Judge Melissa Damian issued a Report and Recommendation that recommends applying the doctrine of collateral estoppel to preclude

---

[1] This fifth case, in Delaware, is the case mentioned above that Plaintiff brought against Defendant's parent company.

Case No. 20-cv-25176-BLOOM/Otazo-Reyes

relitigation of the key issue that the Court resolved in its Summary Judgment Order. *See* Report and Recommendation at 39, Case No. 1:21-cv-22778 (S.D. Fla. Apr. 30, 2023) ("[T]he issue of the geographic boundaries of Plaintiffs' rights . . . was heavily litigated and required significant briefing, testimony, and expert opinions."). Clearly, the collateral estoppel effects of the Court's Summary Judgment Order are not hypothetical or speculative, but rather immediately at issue in other proceedings.

Vacatur would eliminate any preclusive effect of the Court's Summary Judgment Order. *See United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002) (after decisions are vacated, "[t]hey have no legal effect whatever. They are void."). Consequently, other district courts would have to invest significant judicial resources—as this Court did—to adjudicate the issues resolved in the Summary Judgement Order. The collateral estoppel doctrine exists to prevent a plaintiff from relitigating an issue decided against her, at tremendous expense to the judiciary, "as long as the supply of unrelated defendants holds out[.]" *Parklane*, 439 U.S. at 328 (quotation marks omitted). Therefore, when vacatur is sought to avoid collateral estoppel, as here, it comes at a significant public cost. That public cost strongly disfavors vacatur. *See Bancorp*, 513 U.S. at 27 (warning against the "remedy of vacatur" being misused "as a refined form of collateral attack on the judgment," which would "disturb the orderly operation of the federal judicial system.").

The Court concludes that, considering the circumstances of this case, vacatur is not in the public interest. Plaintiff is not asking the Court to vacate a routine "ruling on questions of state contract law," as was the case in *Hartford Casualty*. 828 F.3d at 1336. Instead, Plaintiff asks the Court to vacate a 37-page order interpreting a nascent area of federal law, which may have significant precedential value for Helms-Burton Act cases generally, and tremendous collateral estoppel value for Intervenors, other defendants, and the federal judiciary. Vacatur in these

11

Case No. 20-cv-25176-BLOOM/Otazo-Reyes

circumstances would amount to a significant public detriment. And, as discussed above, there are no "unusual features" of the parties' settlement agreement that would otherwise "tip the scales" in favor of vacatur. *Id*. at 1336.

**IV.     CONCLUSION**

Having carefully considered "the interests of the parties, the judicial system, and the public," *Hartford Cas.*, 828 F.3d at 1337, the Court concludes that vacatur is not appropriate. Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion to Vacate, **ECF No. [302]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 13, 2023.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

12